WILLIAM SMITHKIN

*v.*

DORA SMITHKIN.

[Filed July 17th, 1901.]

1. Upon the facts stated—*Held*, the wife's absence from petitioner is not of itself a desertion entitling him to divorce.

2. Where a divorce is sought for desertion arising from compelled absence of the petitioner for extreme cruelty of respondent, the facts should be so charged in the petition.

On petition for divorce.

*Mr. Samuel G. Naar* and *Mr. Edwin Robert Walker,* for the petitioner.

*Mr. Peter Backes,* for the respondent.

REED, V. C.

The petitioner asks for a divorce because of his wife's alleged desertion. The evidence shows that she left him, not only with his concurrence, but at his insistence. They had a quarrel, when friends were visiting them, and she had struck him, which so incensed him that he insisted upon her return to her father in Boston, on which trip he accompanied her and his child. This was in January, 1898, and since then they have lived separately. During this period he says that he has asked her to return to him, and she has refused. She, on the contrary, says that she has been willing to return, and he has declined to receive her.

I do not think that it is proved that she has remained away from him against his express desire for her return. The letters in evidence show no such condition of affairs. There is nothing in his letter to her, dated October 15th, 1898, respecting his desire for her return. In his letter to her brother, dated June 21st, 1898, he said he had no more love or pity for her. He also said that it was impossible for a man to live with a woman like

11

his wife, and that he had made up his mind to sue for a divorce when the proper time came.

She wrote to him in May, 1898, as follows: "I don't care to compel you to be my husband against your own will, as it would not do me much good if I did." She then says that she will agree to a divorce for money.

While affairs were in this condition, she did not wish to return. What she would have done had he unequivocally invited her to return is not clear. It is not proven that she would not have done so, and I am inclined to think that she would.

If he wished her to return, why did he not write to her, plainly stating his wish?

The difficulty I find with the testimony, detailing conversations had with her by the petitioner and by his friends, is that the reproduction of the exact words of a conversation is next to impossible. I have no doubt that she said in those conversations that she did not wish, and did not intend, to come to Trenton. This was quite natural, considering the circumstances surrounding her departure from Trenton, and the posture of affairs since then. His attitude toward her had been that she was a woman with whom he could not live. That attitude has never been changed, so far as appears. All the testimony produced at the trial was in support of that position. It is, therefore, in the highest degree improbable that he unreservedly asked her to return to him, or that his friends who visited her conveyed to her from him an express desire that she should return. The purpose of such visits and conversations was, I think, to get from her some expression of an intention not to return or live in Trenton. This, I think, they obtained; but, as I have already remarked, it, in the absence of an express invitation showing that the attitude of her husband towards her had been changed, was quite natural.

I am therefore of the opinion that her absence from him was not, by reason of such absence alone, a desertion.

There is another view of the case, which, if within the charge of the petition, would have given me some perplexity.

The evidence, as it stands, shows that, upon the night before the respondent left her husband's home for Boston, she struck him and spat in his face. He says that she was accustomed,

Smithkin *v.* Smithkin.

when angry, not only to strike him, but to spit in his face, and this is corroborated, in some degree, by other witnesses. She admits striking him on this occasion, but denies the other nasty charge. Now, there is no doubt at all that a man who would habitually strike and spit in the face of his wife would be guilty of such cruelty as would justify her in separating herself from him, and would, after the expiration of two years, in the absence of express contrition on his part, lay a foundation for a divorce on the ground of desertion. Scarcely a greater indignity could be offered than by the last-named act. So revolting is it that courts have regarded it alone, or with very slight additional acts, sufficient to constitute cruelty. *1 Bish. Mar. & D.* § *748.*

It is hardly conceivable that a woman would indulge in such conduct under any provocations, and if she should do so, without great provocation, no man should be compelled to live with her.

Blows by a woman with the hand would not, as a rule, injure a man or be regarded as extreme cruelty, but if such blows were accompanied with the other disgusting act, it would, in my judgment, amount to extreme cruelty. And this cruelty, although the wife were compelled by the husband to leave his house on this account, would, perhaps, constitute desertion by her.

This phase of the case, however, I cannot consider. I am of the opinion that when a divorce is asked for on the ground of desertion arising from the compelled absence of the petitioner by reason of the extreme cruelty of the respondent, the facts should be so charged in the bill or petition. The issue to be tried in such a case would be the fact and the degree of the respondent's cruelty, and the respondent is entitled to be informed of the issue to be tried and to answer the acts charged. The case of an ordinary desertion and one such as we are considering radically differ. The proof offered in support of each differ. The proof offered in support of the former would often refute the existence of the latter. This case is an instance, for the petitioner swore that he had asked his wife to return to him, and such a request was in direct opposition to the theory that he, by reason of her extreme cruelty, could not live with her.

I am therefore constrained to the conclusion that a decree for divorce must be refused and the bill dismissed.