The petition in this case is in form one for divorce for constructive desertion, and in that respect is misconceived, as the proofs annexed to the master's report make a case of actual
desertion. It alleges cohabitation between the parties from the time of their marriage in 1900 up to March, 1907, during which time defendant treated the petitioner normally, except that in petty ways she tried to discourage visits and calls upon his friends and to avoid as much as possible inviting his friends to their home, so that after 1907 no friends of petitioner were invited to the home, nor did any of them come there except on two or three occasions; that during a time defendant used liquor to excess, which she afterwards gave up, and they had no further trouble on that subject; that the causes leading up to the cessation of cohabitation in 1907 were that for more than a year prior thereto, when petitioner requested sexual indulgence, defendant almost invariably refused; that finally in March, 1907, defendant definitely and finally refused any cohabitation (meaning, doubtless, sexual intercourse), and petitioner being satisfied that further advances would be unavailing, gave up seeking such relations; that petitioner gave as a reason for her conduct that the highest ideals of married life were lived without *Page 3 
any sexual relations whatever; that in April, 1907, because of the illness of defendant's mother, she was permitted to occupy his bed in their apartment, he sleeping on a folding bed in the dining-room and never again occupying the sleeping room with the petitioner (pleading evidence, which is against the rule); that about the year 1908 defendant, against the protest of petitioner, began the study of palmistry, phrenology, astrology, new thought, new psychology and other so-called idealisms, working herself up to a condition of mind until she was completely under the domination of professors and lecturers on the subjects; that this continued up to September, 1921, when petitioner was driven from his home as a result of the conduct of defendant induced and caused by the conduct of her mother and the influence of the teachers and lecturers mentioned; that from 1908 to 1921 defendant developed a violent and angry temper toward petitioner, and by all the time talking and discussing only the cults, theories and teachings of the lecturers aforesaid, and blaming him constantly for imaginary things, continually nagging him when he was about the house, demanding that he operate and run his business in accordance with the teachings and directions of the lecturers aforesaid, so that he was actually driven from his home Sundays and holidays, c.; that by reason of an automobile accident in 1921 he went to Atlantic City, where he afterwards acquired a residence.
After much more pleading the petitioner avers that the defendant, by the true intent and meaning of the statute in such case made and provided, has ever since the month of September, 1921, and for more than two years then last past, willfully, continuedly and obstinately deserted the petitioner.
This, as stated, amounts to pleading a constructive desertion. It is, in effect, an assertion that the petitioner left the defendant because driven from her by her conduct toward him. The gravamen of the offense, it will be observed, was her denial to him of sexual intercourse. The other matters do not, either by themselves or when coupled with denial of sexual intercourse, amount to extreme cruelty. *Page 4 
In Rector v. Rector, 78 N.J. Eq. 386, it was held that unjustified refusal of one spouse for the statutory desertion period to have sexual intercourse with the other, and withdrawal from other marital duties against the defendant's will, constitute desertion, though they continue to reside in the same house. It was also held that a physical departure from a spouse is not essential to desertion. It therefore follows that actual desertion arises as well from a denial of sexual intercourse as from physical departure. The divorce in the Rector Case was granted upon the cross-petition of the defendant, in which it appears from the files there was no recital of facts alleging that they, within the meaning of the statute, constitute desertion, but a mere statement that the defendant deserted the petitioner, couched in the statutory language. The proof of the desertion was the denial of sexual intercourse. Although theRector Case mentions withdrawal of other marital duties against defendant's will, that is doubtless because the facts were present before the court, but it is not suggested that they constituted cruelty, and it is perfectly apparent that the divorce would have been granted for the denial of sexual intercourse alone, if there were no other facts in the case. And our adjudicated cases, as I understand them, so hold.
In Parmly v. Parmly, 90 N.J. Eq. 490, a divorce was granted for desertion, the desertion consisting of a denial of sexual intercourse by the husband, although the parties continued to live under the same roof. The petition simply pleaded actual desertion. And there are other cases to the same effect, as an inspection of the files in the clerk's office will show.
Although a constructive, instead of an actual, desertion was pleaded in this case, the legal situation is not like that presented in Metzler v. Metzler, 69 Atl. Rep. 965, wherein an actual, instead of a constructive, desertion was pleaded. In that case Chancellor Pitney said: "The petition charges in the simplest form that the defendant deserted the petitioner on the date mentioned," which, of course, means that the petition charged an actual desertion. The chancellor *Page 5 
further observed that the case made by the proofs and found by the master was, that on the date referred to the petitioner left the defendant because of his long-continued cruel treatment of her; that a case of constructive desertion on the part of the defendant was fairly made out, but that the petition did not plainly and fully convey notice to the defendant that he was called upon to answer a case of constructive desertion, and that he was justified in supposing that his wife could not support with proofs the case that she averred in her petition. He held that the defect might be cured by amendment, and permitted an amended petition to be filed with leave to the petitioner to take an order reciting the making of the master's report and the filing of the amended petition, and requiring defendant to show cause at a future date why a decree should not be made against him for constructive desertion in pursuance of the master's report. See, also, Thomas v. Thomas, 74 Atl. Rep. 125;McLaughlin v. McLaughlin, 90 N.J. Eq. 322.
The reason the situation in the case at bar is not like that in the cases last cited is, that the simple charge of willful, continued and obstinate desertion for the statutory period means an actual desertion, and this, of course, includes anything that amounts in law to an actual desertion, including denial of sexual intercourse, as it has been repeatedly held that that constitutes actual desertion.
In Smithkin v. Smithkin, 62 N.J. Eq. 161, Vice-Chancellor Reed observed (at p. 163): "I am of opinion that when a divorce is asked for on the ground of desertion arising from the compelled absence of the petitioner by reason of the extreme cruelty of the respondent, the facts should be so charged in the bill or petition. The issue to be tried in such a case would be the fact and the degree of the respondent's cruelty, and the respondent is entitled to be informed of the issue to be tried and to answer the acts charged. The case of an ordinary desertion and one such as we are considering radically differ. The proof offered in support of each differs. The proof offered in support of the former would often refute the existence of the latter. This case is *Page 6 
an instance, for the petitioner swore that he had asked his wife to return to him, and such a request was in direct opposition to the theory that he, "by reason of her extreme cruelty, could not live with her."
Now, obviously, if a decree is sought on the ground of extreme cruelty, the facts must be pleaded to put the defendant on notice of the charge against him and give him an opportunity to defend against those particular facts, and if, as in the instant case, an actual desertion is relied upon, though pleaded in the form of a constructive desertion, the defendant is not harmed, because she has full notice of the facts alleged, whereas, in the case of an actual desertion, there is no fact necessary or proper to be alleged in the petition except the physical departure from the petitioner, and that, in effect and intendment of law, is charged by pleading a willful, continued and obstinate desertion for the statutory period. Therefore, it results that there need be no order to show cause here to enable the defendant to meet the case of the petitioner. She is presumed to know the law and to know that a charge of actual desertion resides in the long and more of less complicated state of facts detailed in the petition. I say a charge of actual desertion, because these facts do not, to my mind, make a case of extreme cruelty, and, consequently, do not make a case of constructive desertion. No violence was offered by the wife to the husband, who married her for better or for worse, and there is no law to prevent a wife from discouraging calls on or from her husband's friends, or embracing the study of palmistry and other kinds of so-called idealisms, losing interest in her husband and nagging him, all of which, and more of the same general character, is charged in the petition.
Mr. Bishop in his work on Marriage, Divorce and Separation,vol. 1, § 1630, says that causes, both physical and mental, render the infliction of cruelty by the wife on the husband less common than by him on her, yet the law gives the same relief to a complaining husband as to a complaining wife. And in section 1638, that the wife's petty annoyances of the husband, such as fault-finding, disparaging his commonsense *Page 7 
taste and judgment, and other like complainings of him; her absence from home to learn painting, without his consent; her occasionally addressing him angrily and disrespectfully, and for a time refusing to sleep in the same room with him, have severally been held inadequate cruelty for divorce in favor of the husband. And these causes are very like the ones alleged in the case at bar.
There is a feature of this case that should be adverted to, and that is the character of much of the testimony that has been taken. It abounds in leading questions, hearsay and characterizations, against the rules of evidence. To illustrate. Petitioner was under examination as follows:
"Q. You now know that about that time, or shortly prior to that time, she [defendant] had fallen in love with some other man, don't you? A. I had been told so. Q. Who told you? A. Miss Florence Clark. Q. You never suspected yourself she had any affection or interest in him, except as a music teacher? A. That is all." The court has nothing to do with petitioner's suspicion, and counsel is not entitled to ask a witness what his suspicions are. We deal only with facts. "Q. You had never heard from Miss Clark or from anyone else any suggestion of suspicion of Mrs. Wood's relation with Tier until this present month? A. Never. Q. You think that she made it plain to your friend that she didn't want him to come to that house? A. Yes.Q. How did she make it plain, what did she do?" A proper question would have been, "What, if anything, did defendant do with reference to your friends?" "Q. Why didn't they come home? A. I don't know." This question permitted an answer consisting of anything the witness thought on the subject, and certainly his undisclosed thoughts could not be evidence. Of course, the master's question about the pendency of other and former proceedings are in the nature of a cross-examination and may be leading.
Edwin J. Johnson testified: "Q. Did she [defendant] appear to be bull-headed, was it something she was insistent upon? A. Most insistent." What was bull-headed to the witness might not be to the court — besides, it was the statement *Page 8 
of mental attitude instead of a fact. "Q. Did you know that Mr. and Mrs. Wood didn't sleep together and didn't occupy the same bed? A. Yes. Q. How did you know that? A. In several different ways. Mr. Wood told me, and then at different times when I was there I heard her say, `Mother was sick in the night and I had to get up in the night and call Major [Mr. Wood],' so I knew from inference." Inferences are not evidential.
Elsa C. Pearson was examined: "Q. Was she [her mother] really an invalid or an imaginary one? A. She seemed very miserable at times, suffering with neuritis." Of course, this question was inadmissible. The question was obviously objectionable, but the answer was harmless, though irresponsive.
The rules of evidence, which do not permit of leading questions, characterizations, hearsay and conclusions, and which require that facts only may be testified to by witnesses, leaving all inferences to be suggested by way of argument and to be decided by the court, apply as well to ex parte cases as to litigated ones. In ex parte cases the court represents the absent defendant, to the extent, at least, of seeing to it that he is condemned only upon a proper case being made out by legal evidence. A defendant who does not contend against a plaintiff's demand has the right to presume, and to rely upon the presumption that no judgment will pass against him unless the adversary party shows himself entitled to it by the strict rules of law. In reMcCraven, 87 N.J. Eq. 28; see, also, Butts v. French,42 N.J. Law 397, 400. Rule 178a of this court, promulgated March 23d 1923, charges the masters with the duty of aiding the court in keeping out irrelevant, incompetent and immaterial testimony. Another thing: The testimony in this case was entirely too prolix. In ex parte cases no more testimony should be taken than is reasonably necessary to prove the petitioner's case. There is, however, sufficient legal evidence in this case to warrant a decree for the petitioner, and I am minded to grant him that relief, notwithstanding the incompetent testimony above adverted to. And there is much more of it in the case than that herein specifically set out. *Page 9 
The result reached is, that although the petition counts upon a constructive desertion, while the proofs show an actual one, and while the proofs abound in illegal evidence, nevertheless, there being sufficient legal testimony of an actual desertion to warrant a decree nisi, such decree will be granted for that cause.
Decree nisi accordingly.