MARTHA MAGRATH *vs.* THOMAS MAGRATH.

Proof that a husband, intentionally and against his wife's consent, has for five consecutive years abandoned all matrimonial intercourse and companionship with her, and denied her the protection of his home, will sustain her libel for a divorce from the bond of matrimony on the ground of his desertion; and it is immaterial that during the period he has regularly contributed money, and from time to time necessaries, towards supporting the wife and their children.

LIBEL filed at April term 1868, for a divorce from the bond of matrimony for the cause of desertion continued for five con-

───

secutive years; tried at April term 1869, before *Morton,* **J.,** and reported as follows for the determination of the full court:

"It appeared in evidence that the parties were married in October 1850, and lived together at Charlestown, and separated twelve years ago. After the separation, the libellant, being destitute, called upon the overseers of the poor for aid, who called upon the libellee; and thereupon the libellee allowed his wife seven dollars per month for her support, for two years, when the parties came together again, and continued to live together for a short time, when they separated again, and the libellee allowed his wife nine dollars per month, which sum was afterwards increased to ten dollars per month, and furnished some wood and coal and other supplies. The parties came together again; but in 1861 they separated, the libellee alleging that his wife's temper was such that he could not live with her; and he has continued to live apart from her ever since, although he did during all the time since, up to the time of filing the libel, supply her with fifteen dollars per month for the support of herself and children; and, from time to time, during the whole separation, and down to the time of filing the libel, the libellee has furnished to his wife some wood and coal, flour, clothing and shoes, for herself and his children, and, when called upon, as he was occasionally, sent to the libellant small sums of money, and furnished a physician when needed at all times. The libellant frequently applied to her husband to live with her; but he declined to do so, alleging as a reason that her temper was such that he could not live with her in peace, and that it was better that they should live separate. The parties have three children. During all the time since 1862 the parties have lived separate, the libellee declining to live with his wife for the reason before stated, but during all the time he has made the payments and advances before stated. Such payments were insufficient to support the libellant, and she has been obliged to labor constantly for the support of herself and the children. On the evidence, the judge was of the opinion, and found, that the libellee was not justified in refusing to live with his wife; and, at the request of the libellee, reserved for the consideration of the

whole court the question whether upon the facts above stated a divorce from the bonds of matrimony should be decreed."

*T. H. Sweetser & J. B. Goodrich,* for the libellant.

*I. S. Morse & C. Robinson, Jr.,* for the libellee.

COLT, J. It was held in *Southwick* v. *Southwick,* 97 Mass. 327, that the refusal of matrimonial intercourse, although unjustified by considerations of health or physical disability, inasmuch as it was a breach or violation of a single conjugal or marital duty only, would not support a libel for divorce on the ground of desertion, when it had continued for five years consecutively.

The case at bar goes much further. Here there has been for the time required by the statute, an abnegation on the part of the husband of all the chief duties and obligations which result from the marriage contract and distinguish it from others. There is no more important right of the wife, than that which secures to her in the marriage relation the companionship of her husband and the protection of his home. His wilful denial of this right, with the intentional and permanent abandonment of all matrimonial intercourse, against her consent, is desertion within the meaning of our statute. And such conduct is not relieved by the fact that he has from time to time contributed to her support and the support of her children. A man may do as much as this, from motives of charity, or deference to the opinions of others, or in order to discharge, in part, a legal responsibility for the means of living furnished her; although he may all the time have a fixed intention permanently to abandon all personal relations with her. In the case at bar, indeed, the wife, in her destitution, first applied to the overseers of the poor, who then called upon the husband, as they had the right to do, for the aid which he was bound to furnish.

When the intention to desert is in controversy, and the evidence is meagre or conflicting, there are many cases, no doubt, where the fact that the husband continues supplies to his wife will be strongly significant, if not decisive in his favor. That is not the question here. And we are of opinion that, in a case ike the one at bar, the right of the wife to a divorce, and to

suitabl₃ alimony out of his estate, is not to be defeated by his contributions towards her support, made after his abandonment of her.

In the recent English case of *Yeatman* v. *Yeatman*, Law Rep. 1 P. & D. 491, where it was contended by the husband that the fact that he had continued to support his wife prevented his conduct from amounting to desertion within the meaning of the divorce act, it was said by the judge ordinary, that, although the permanent denial of the right of the wife may be aggravated by leaving her destitute, or mitigated by a liberal provision for her support, yet, if cohabitation is put an end to, against the consent of the wife, with no intention of renewing it, the matrimonial offence of desertion is complete.

*Divorce from the bond of matrimony decreed.*