Stein v. Stein.

## STEIN v. STEIN.

1. Desertion consists in the actual ceasing of cohabitation, and the intent in the mind of the offending party to desert the other.

2. Matrimonial cohabitation must comprehend a living together as *husband and wife,* embracing relative duties as such.

*Appeal from District Court of Arapahoe County.*

ACTION for divorce. It appears from the record that the appellant was a practicing physician. That his income was between two thousand and three thousand dollars per annum. The court below, in its decree, found that the appellant at the time was possessed of moneys, goods and chattels and real estate, to the value of thirty-six hundred dollars. That the appellee had had the care and support of the two children (aged respectively eight and fifteen years), continuously from March, 1876, to September, 1878, and thereupon allowed alimony in the sum of fourteen hundred dollars, as follows: "Two hundred dollars within thirty days, four hundred dollars within four months, four hundred dollars within eight months, and four hundred dollars within one year;" also that the defendant pay two hundred dollars to the plaintiff's solictor,

before October 1st, 1878, and that plaintiff have the care and custody of the children. Other facts are stated in the opinion.

Messrs. MARKHAM & THOMAS, for appellant.

Mr. ENOS MILES, for appellee.

STONE, J. It is contended by appellant that the suit for divorce was prematurely brought. The bill alleges desertion, continued for more than one year prior to bringing suit, as ground for the divorce sought. It is admitted that appellant quit the dwelling house for good, and ceased sleeping there about the 3rd of May, 1876, and that the bill for divorce was filed April 7th, 1877. On the other hand, it is established by the testimony, that in the month of March, 1876, appellant, among other acts complained of, ceased to occupy the bedroom of his wife, and from that time to the date of his final leaving the house in May, whenever he remained at the house over night, he slept on a lounge in the kitchen, and had no matrimonial intercourse, companionship or communication with his wife, whatever.

Mr. Bishop, in his work on Marriage and Divorce, defines desertion to consist in, *first*, " The actual ceasing of cohabitation;" and *secondly*, " The intent in the mind of the offending party to desert the other." 1 Bishop on Marriage and Divorce, (5th Ed.) Sec. 777.

It is insisted by counsel for appellant that upon this accepted definition, there was no cessation of " cohabitation " until defendant ceased to sleep in the same house with complainant; that therefore the desertion did not begin until May, 1876, and hence had not continued a whole year prior to the filing of complainant's bill. This is the chief question for us to determine. We think the construction claimed for the term " cohabitation " entirely too narrow. Matrimonial cohabitation must certainly comprehend a living together as *husband and wife*, embracing relative duties as such. Otherwise, all

the married couples residing in a hotel, boarding or lodging house, might be said to be cohabiting promiscuously.

In connection with the text which we have quoted from, *supra*, Mr. Bishop, the learned author adds: " But it is wholly immaterial whether the distance to which the parties remove apart is great or small, except, perhaps as illustrating, under some circumstances, in matter of evidence, their intent; for the criterion in all cases is the intent to abandon."

The intent of the defendant to desert his wife in this case is fully shown by his conduct both before and after ceasing to sleep upon the premises of the domicile, and we can conceive that it would not have altered the case had he for those few weeks slept in the barn, or at his office, where he did sleep after leaving the kitchen lounge.

In *Magrath* v. *Magrath*, 103 Mass. 579, it is said that " There is no more important right of the wife than that which secures to her in the marriage relation the companionship of her husband and the protection of his home. His willful denial of this right, with the intentional and permanent abandonment of all matrimonial intercourse, against her consent, is desertion within the meaning of the statute."

The desertion commenced when, as the evidence shows, the defendant husband intentionally laid aside and refused longer to perform all the chief duties and obligations on his part, which are imposed by the marriage contract, and distinguish it from all others. *Magrath* v. *Magrath*, *supra*. Nor do we think, in view of all the evidence, that the amount of alimony allowed by the court was excessive.

The decree of the court below seems to be sustained by the testimony in the case, and will be affirmed accordingly.

*Decree affirmed.*