ANNA PINKINSON

*v.*

JACOB PINKINSON.

[Decided January 22d, 1920.]

Where a husband, though living in the same house with his wife, refused to converse with her, or go anywhere with her, and also refused to have sexual intercourse with her, and excluded her from his bed, he has abandoned her and separated himself from her within the meaning of the statute concerning divorce.

On bill for maintenance.

*Mr. Frank E. Bradner,* for the complainant.

*Mr. Joseph Kraemer,* for the defendant.

FIELDER, V. C.

The parties were married June 6th, 1909, and one child, now eight years of age, is the fruit of the marriage. Differences and disagreements arose between the parties within one or two years, resulting in several separations, the first of which occurred in or about 1915, and it is clear that the termination of each separation was at the complainant's request and while they resumed living together it was not in harmony and the defendant says he ceased to care for his wife after their first separation. When they resumed living together for the last time, which was about May 1st, 1918, it is apparent that their differences had in no way abated. Each puts the blame for the disagreements on the other, but it is not necessary to determine where the truth lies. Although they lived together and they occupied the same bed up to three weeks prior to the filing of the bill of complaint, their marital relations had ceased long prior to that time, the defendant fixing the period as one year and they

agree that they had ceased holding conversation with each other for three months prior to their separation, and the complainant claims that her husband was not providing her with adequate support. Three weeks prior to filing the bill, the complainant says she could no longer stand this manner of living and she left his bed without objection on his part, occupied another room in the same house and went to see a lawyer with reference to compelling her husband to support her. Suit was commenced and they remained under the same roof for a few weeks thereafter, when she left because her husband had been away for ten days without telling her of his intended departure and without leaving any money for the support of herself and her child. When she finally left the house, taking the child with her, he was at home and saw her packing her things preparatory to moving, but did nothing to induce her and the child to stay. It must be presumed that he then knew what charges had been made against him in her suit, and if he felt he was not at fault and was not willing to have her go, but desired to have her stay and live with him as his wife, it was his duty to tell her so. But his attitude toward her since their first separation has been that she is a woman with whom he had no desire to live, in fact, to sum up his testimony on the witness stand, he said he was unhappy with her after the first year of their marriage; that he does not care for her or to live with her and that he will not take her back or provide a home for her.

In my opinion he abandoned her or separated himself from her within the meaning of the statute, though living in the same house, when he refused to converse with her or to go anywhere with her and refused to have sexual intercourse with her and excluded her from his bed. *Anshutz* v. *Anshutz, 16 N. J. Eq. 162; Weigand* v. *Weigand, 41 N. J. Eq. 202; Margarum* v. *Margarum, 57 N. J. Eq. 249; Rector* v. *Rector, 78 N. J. Eq. 386-407.*

I also find that although the complainant and defendant were living in the same house when she commenced this suit, he had neglected to properly maintain or provide for her and her child. She had on another occasion during their married life, taken legal means to compel his support, and when she filed this bill

of complaint, he was giving her but a few dollars a week, although he was earning $75 a week and she was working as a saleswoman at $18 per week, to earn money for herself and the child. He resigned his position shortly after this suit was brought and says that he has now no employment. I think this resignation was the result of a thought that it would have a bearing, advantageous to him, on the amount this court would award the complainant, because he says he thinks he can go back to his old position. I believe his earning capacity is $75 per week. The complainant says she is not in good health and that her physician has advised her she should not work, but there is no evidence to corroborate her, except that she limps slightly when she walks, which she attributes to injuries sustained in an accident. I shall award her $24 per week for maintenance and support of herself and child, with costs of suit and a counsel fee of $100. When the decree is prepared, it should contain a provision that either party shall be at liberty to apply to the court, upon a future change of circumstances of the parties, for a variance or modification of the decree touching the amount of complainant's maintenance.