### PEDERSEN v. PEDERSEN.
### No. 7318.

United States Court of Appeals for the District of Columbia.
Decided Aug. 14, 1939.

---

Alfred M. Schwartz and Samuel A. Friedman, both of Washington, D. C., for appellant.

Jean M. Boardman, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

This is a special appeal from an order of the District Court denying, on November 7, 1938, appellant's motion for maintenance and counsel fees pendente lite, made in her suit for a limited divorce from appellee begun October 19, 1938. The application was heard entirely upon the record, each party having filed an affidavit according to usual practice. On March 2, 1939, appellant also filed here her petition for maintenance pending appeal, to which answer has been filed. The answer shows that on January 3, 1939, the court ordered appellee to pay, and he has paid, $300 for costs and expenses of this appeal and counsel fees.

As is admitted, the award of support and counsel fees pendente lite ordinarily is a matter for the trial court's discretion in the first instance, and its judgment will not be disturbed except by a clear showing of

abuse of discretion.[1] Appellant contends and appellee denies that such abuse exists here.

The order does not disclose the grounds upon which it was made, stating merely that "it is not a proper case for the allowance of maintenance or counsel fees pendente lite." The conclusion concerning counsel fees has been modified by the court's subsequent action awarding fees for prosecution of this appeal. It is not contended that the bill does not state a cause of action.[2] The only arguments made in support of the order are: (1) that appellant is precluded from this relief by the fact that the parties admittedly have lived in the same dwelling since prior to the filing of the bill; (2) that appellee is furnishing adequate support to appellant, and therefore the court has discretion, which it has exercised, to deny an award. Appellant says the first contention is contrary to law, asserts she is receiving grossly inadequate support, and that the court's refusal to award further support is an abuse of its discretion. We must assume, in the absence of other contentions, that the order was based on one or both of those presented to us. A summary of the facts will be helpful in determining the issues.

Appellee is a patent lawyer, in comfortable financial circumstances, with substantial income from his profession and from securities owned by him.[3] He has followed life-long habits of thrift, saving one-third or more of his income prior to his marriage to appellant in Copenhagen, Denmark, in 1933, and apparently thereafter, at least since 1935. He and appellant were fifty-one and forty-eight years of age, respectively, when the bill was filed. The record does not state clearly whether appellant was a resident of Denmark prior to the marriage. It does not indicate that she has relatives in this country. She has no income or funds of her own, and no, or little, earning capacity.

Inevitable adjustments required by comparatively late marriage, coupled with and arising particularly from differences regarding money matters, apparently became serious shortly after July, 1935, when appellee purchased a home and had title placed in the parties in tenancy by the entirety.[4] The bill alleges, and it is not denied,[5] that shortly following the purchase appellee told appellant he regretted placing title jointly; threatened to allow foreclosure if she did not reconvey her interest to him, and has been attempting since her refusal to compel her to leave him; has told her repeatedly he hopes for an early separation, and that she should get out of the house.

Beginning with these incidents, the contention appears to have gathered volume constantly, reaching a climax in the latter part of September, 1938, following the return of the parties from an extended

---

[1] As held repeatedly by this court: Tolman v. Tolman, 1893, 1 App.D.C. 299, 311; Shaw v. Shaw, 1894, 2 App.D.C. 204, 206; Lesh v. Lesh, 1903, 21 App. D.C. 475, 486; Reed v. Reed, 1922, 52 App.D.C. 35, 36, 280 F. 1009, 1010; Myers v. Myers, 1925, 55 App.D.C. 224, 225, 4 F.2d 300, 301; Lachowicz v. Lachowicz, 1931, 60 App.D.C. 373, 55 F. 2d 535; Garrett v. Garrett, 1932, 61 App.D.C. 309, 310, 62 F.2d 471, 472; Jackson v. Jackson, 1933, 62 App.D.C. 346, 68 F.2d 393; Shellman v. Shellman, 1938, 68 App.D.C. 197, 198, 95 F. 2d 108, 109; Davis v. Davis, 1938, 68 App.D.C. 240, 241, 96 F.2d 512, 513, reversed on other grounds, 1938, 305 U. S. 32, 59 S.Ct. 3, 83 L.Ed. 26; Eliasson v. Eliasson, 1938, 68 App.D.C. 391, 98 F. 2d 263. Cf. Cissell v. Cissell, 1932, 61 App.D.C. 271, 272, 61 F.2d 679, 680.

[2] Cf. Cissell v. Cissell, 1932, 61 App.D. C. 271, 61 F.2d 679; Klemme v. Klemme, 1890, 37 Ill.App. 54; Herrett v. Herrett, 1910, 60 Wash. 607, 111 P. 867.

[3] His admitted income was: from his profession, for 1937, $2,348.99; for 1938, $3,189.25; from securities owned, for the same years, respectively, $1,788 and $1,074.21. The facts concerning his interest in the home and its furnishings are set out in note 4. It is alleged and not denied that he owns and operates two automobiles.

[4] The house has eight rooms and two baths. The purchase price was $15,900, of which $2,000 was paid in cash, and $13,900 by deferred purchase money trusts, which appellee reduced to $5,000 prior to October 1, 1938. Two special or "extra" payments of $500 each were made by him in August and September, 1938. Appellant alleges the furnishings cost from $8,000 to $10,000, appellee asserting the correct figure to be $4,000.

[5] Appellee's affidavit and his answer to the motion filed here deny that the parties are living separate and apart, and assert that they continue to live together in the same house substantially as prior to the filing of the bill, etc., but there is no denial of the facts stated.

vacation by automobile in Canada. Appellee has kept a tight hold on the purse, handling all money except such as he has seen fit to hand over to his wife, forbidding charge accounts and insisting on cash purchases only, which recently he has made himself, and dictating many matters of household management ordinarily regarded as the province of the wife.[6] Extreme financial urgency might justify insistence upon drastic reduction of expenditures, but no showing of such a situation is made here.[7] In short, appellee has regarded all financial matters, including those of expenditure for household needs and personal expenses of living, both for himself and for appellant, as peculiarly and almost exclusively his province, going on the "hand-out" theory of marriage, by which the wife's part is to receive, without complaint and gratefully, exactly what the husband wishes to give her and no more, having no voice in the selection or quantity, beyond the limit placed by him, of the things essential to living.

Appellant alleges that since September, 1938, the parties have "been living separate and apart without cohabitation", though sharing the same roof, which is owned by them jointly. They occupy separate bedrooms and eat separately, each preparing the food he or she consumes, which is selected, purchased and brought into the house by appellee. The bill alleges, without denial, that on September 15, 1938, appellee ordered appellant out of the kitchen and since that time has declined to allow her to cook any meals for him, but insists upon cooking his own meals.[8] Such association and conversation as occur between them are hostile and acrimonious, each charging the other with constant criticism, nagging, et cetera.

In addition to the shelter of the home and the food brought in by appellee, appellant has received small sums of money from him, handed out in cash a dollar or two at a time, aggregating about $3 a week from September 15 to the date of the order, and since then, as shown by the

---

[6] Appellee has prohibited all purchases on credit, while retaining all funds in his own hands except a "spending money" allowance, which the record shows has gone in part to pay household expenses. In 1936, he discontinued a charge account at a grocery store, "where the plaintiff had been making charges *beyond the limit set by me*. Since that time", he says, "I have made it a general practice to purchase groceries and supplies for cash, and there has been no occasion to and I have not instructed any grocer not to extend credit to the plaintiff." [Italics supplied] There is no pretense that she was supplied with any funds to pay household expenses, beyond the "spending money" allowance. He has selected and purchased all of the household furniture. On one or two occasions appellant has had to borrow money from friends to meet necessary living expenses. In September, 1938, appellee discontinued telephone service in the home, and directed appellant to discharge the maid who came once a week to clean, scrub, and do laundry, at a cost of about $3. He claims appellant has wanted to spend more money than he thought justified and that she is able to do and should do all of the work in the house. She denies extravagance; asserts she has lived most economically, buying only absolute necessities; that she is not well, or able to do scrubbing, window-washing, laundry, etc. In short, it appears that since 1936, the husband has taken over the entire management of the household, purchasing all food, se-

lecting it, determining its quantity, quality and kind, handing over to the wife what he thought she should have and no more. Her extremity is shown by the fact that she continued to pay the maid out of her meager allowance until it became impossible after this suit was instituted.

[7] Appellee justifies his restrictions generally on the necessity of saving for financial independence, and the drastic retrenchments of September, 1938, because of the expense of the Canadian vacation, poor business conditions, lack of cash and the prospect of having to sell some securities. The degree of financial security which already has been achieved negatives the necessity for so drastic a general policy, and the temporary embarrassment appears at least questionable when the two special payments of $500 on the encumbrances on the home at this particular time are recalled. It now appears that his income for 1938 was greater than that for 1937. The telephone had not been reinstalled when appellant filed her petition here, resulting in her having to remain in the house without heat on one or two occasions during the winter when the fuel ran out.

[8] Appellee's affidavit denies recollection of this occurrence, but admits it may have taken place, and if so, "it was because she was nagging me and I wanted to eat in peace." He states also that since returning from the vacation of last summer, he has prepared such meals as he has eaten at home.

petition and answer filed here, checks for $5 weekly, with occasional omissions. From these sums appellant has had to supply her clothing, the maid's pay until her discharge, transportation, medical supplies and other necessaries of living in a modern city.

This suit is for a limited divorce and alimony, temporary and permanent, or in the alternative, as stated in the briefs, for separate maintenance of the wife under the Code.[9] The two causes of action are distinct not only in the nature of the relief sought, but also in the statutory causes for which it may be granted. We need not decide whether they can be joined alternatively in a single bill, or whether the bill states a cause of action for separate maintenance. The issues before us arise on an application for support, suit money and counsel fees pendente lite. Although the briefs appear to regard such an application as appropriate either in a suit for divorce or in one for separate maintenance, the statute [D.C.Code (1929) tit. 14, § 70] purports to authorize an award pendente lite only as incident to a suit for divorce or one for annulment. It makes no provision for such an award as incident to a suit for separate maintenance under Section 75 of the same title, nor does that section purport to do so. The question was not presented or argued whether a temporary award can be made as incident to a suit solely for separate maintenance and pending the final determination of such a suit. In the absence of a specific presentation of the question, we do not determine it, and therefore treat the application made below and the order on appeal here as being made solely pursuant to Section 70, as incident to the suit for limited divorce.

In such a proceeding, of course, a sufficient degree of separation or living apart must be maintained from the time of the acts constituting the grounds alleged for divorce to avoid condonation. But we do not regard living under separate roofs as a sine qua non for this purpose, or consequently, for the relief asked here. Ordinarily, of course, husband and wife who have reached the parting of the ways will not continue to live in the same house. But there are circumstances in which no other abode is available, practically speaking,[10] to a helpless and deserted or abused wife. To compel her, in order to avoid condoning her husband's offense or submitting absolutely to his hostile will in the matter of her maintenance, to leave the only shelter she has, particularly when she owns it absolutely or equally with him,[11] would be both unjust and contrary to settled law. She is not required to forego shelter in order to obtain food. Nor is she compelled, in asserting her rights, to surrender the possession of her property or convey it to her husband. Continued residence in the same dwelling is one fact which is evidentiary on the question whether the parties live together *as husband and wife*.[12] It is not, in and of itself, a criterion. We have no statute

---

[9] Under the D.C.Code (Supp. IV, 1938) tit. 14, § 63 (Act of Aug. 7, 1935, 49 Stat. 539, c. 453, § 1), legal separation from bed and board is authorized for various grounds, including cruelty; with provision for alimony, suit money and counsel fees pendente lite under D.C.Code (1929) tit. 14, § 70. Section 75 provides for maintenance only of a wife and minor children, if any, without regard to grounds for divorce, on showing non-support and the husband's ability to provide for them.

[10] Where, as here, the wife's power to pledge her husband's credit has been cut off by his notice to particular traders, she would be trying simply to sell a lawsuit to grocers and others, if as was said by way of dictum in Harper v. Harper, 1860, 29 Mo. 301, 302, as a consequence of the husband's cruelty driving her from home, the law should "send(s) her out with credit for all that may be necessary for a support according to her husband's state and expectations in life." Cf. McCloskey v. McCloskey, 1896, 68 Mo.App. 199, 205.

[11] Cf. Chapman v. Chapman, 1874, 25 N.J.Eq. 394. It would be a strange relic of another legal day if the husband, upon whom is the duty of support, could continue occupancy of the wife's house or one jointly owned by them, she having to leave it while his occupancy continues.

[12] Cf. Garrison, V. C., in Rector v. Rector, 1911, 78 N.J.Eq. 386, 408, 79 A. 295, 304, speaking with reference to a wife who continued to reside in the family home long after her withdrawal from normal wifely conduct had created grounds for divorce for desertion: "She eliminated herself absolutely from his life from that time on, excepting as a person who was under his roof and must be supported." As in that case, so here, caution is appropriate against confusing matrimonial relations with the purely sexual side

which requires "living separate and apart" as a condition either of divorce or of maintenance.[13] In the absence of a statute requiring more,[14] we think all that is required of the wife is that she so segregate herself from her husband as to avoid condoning the acts which she charges as the basis for the divorce or other relief she seeks. To do this, the essential thing is not separate roofs, but separated lives— that the parties so live, whether under one roof or two, as to abandon, with apparent permanency of intention,[15] the relation of husband and wife in all but the most technical legal sense.[16] Men and women may live as strangers, even as enemies, more separately, more contentiously, more violently, under a single roof than under two. Continued occupancy of the same house may be evidentiary either of harmonious or at least not disrupted matrimonial relations or of compelling necessity on the part of one or both of the parties. Generally, and in the absence of contrary showing, it will support the former view. But it does not create a conclusive presumption of law to that effect. It is merely one fact, to be considered with others, in determining the character of the association and relations of the man and the woman. Its normal inferential value can be overcome by evidence showing that they live not as man and wife.

There are opinions, relied upon by appellee, which assert, principally by way of dicta, that sharing the same roof precludes the existence of living separate and apart.[17] The cases most nearly approach-

---

of marriage, merely one aspect of the total relation.

[13] Unless the ground specified for the divorce be voluntary separation from bed and board for five years. D.C.Code (Supp. IV, 1938) tit. 14, § 63.

[14] We do not intimate by this that a statute requiring merely "living separate and apart" does or would require more. Cf. Pinkinson v. Pinkinson, 1920, 91 N.J.Eq. 281, 109 A. 731, affirmed, 1921, 92 N.J.Eq. 669, 113 A. 143, and other cases cited note 21, infra.

[15] In Rector v. Rector, 1911, 78 N.J. Eq. 386, at page 404, 79 A. 295, at page 302, a suit for divorce for desertion, Garrison, V. C., said: "Since in the vast majority of cases *the only way to prove* that the offending spouse *intended* to desert is * * * a physical going away from and abandonment, it has almost come to be believed that a physical departure * * * is an essential element of the offense. I do not believe that it is either by precedent, definition or reason. * * * The real question is, therefore, * * * Did Mrs. Rector *intend* to desert her husband?" [italics supplied], a question answered affirmatively although she resided in the same house with him during the entire statutory period. In Herrett v. Herrett, 1910, 60 Wash. 607, at pages 609, 610, 111 P. 867, at page 869, the court said: "The evident purpose of the appellant was to abandon his wife while apparently living with her in the same house, and thus by such treatment force her to obtain a divorce"; and in Stein v. Stein, 1879, 5 Colo. 55, 57: "The intent of the defendant to desert his wife in this case is fully shown by his conduct both before and after ceasing to sleep upon the premises of the domicile," holding the required statutory year

of desertion began before he stopped sleeping in the house.

[16] Cf. Rector v. Rector, 1911, 78 N.J. Eq. 386, at page 400, 79 A. 295, at page 301: "There is evidence that from a period in 1907 these two people, while they lived under the same roof, did not live as husband and wife, not only as to sexual intercourse, but as to any other of the things that distinguish married life from mere existence under the same roof"; and Stein v. Stein, 1879, 5 Colo. 55, at page 56, answering the argument that there was no cessation of "cohabitation" while both slept in the same house: "We think the construction claimed for the term 'cohabitation' entirely too narrow. Matrimonial cohabitation must certainly comprehend a living together as *husband and wife*, embracing relative duties as such. Otherwise, all the married couples residing in a hotel, boarding or lodging house, might be said to be cohabiting promiscuously." " * * * desertion * * * may be as complete under the same shelter as if oceans rolled between." Graves v. Graves, 1906, 88 Miss. 677, 680, 41 So. 384. In that case the wife, who had left the house, which was involved in litigation between the parties, on advice of counsel returned to it in order to protect her property rights, and remained in it during a large part of the statutory period of desertion, the court finding she and her husband occupied "towards each other the attitude of strangers." Cf. note 21, infra, as to the relevancy of desertion cases on the issue here.

[17] See Klemme v. Klemme, 1890, 37 Ill.App. 54; Smith v. Smith, 1910, 156 Ill.App. 176; Fullhart v. Fullhart, 1904, 109 Mo.App. 705, 83 S.W. 541; Collins v. Collins, 1880, 80 N.Y. 1; Tayman v.

ing the view contended for by appellee arise under statutes requiring "living separate and apart" as the basis of the wife's right to maintenance.[18] We have no such statute, but on the contrary, our statutes provide for support of the wife without regard to such a requirement.[19] Nor would we regard such a requirement, if there were one, as in all cases compelling residence under separate roofs.[20] We think the contrary view the better one and supported by the clear weight of authority.[21] Having regard to the emphasis placed upon the "single-roof" contention

---

Tayman, 1851, 2 Md.Ch. 393; Harper v. Harper, 1860, 29 Mo. 301. On the facts and issues decided, none of these cases supports appellee's position, though the opinions contain favorable dicta. The Klemme case held that a bill for separate maintenance under a statute requiring living "separate and apart" did not state a cause of action for want of any allegation of separate living. In the Smith case, under the same statute, the chancellor's finding was only of cruelty creating equities in the wife, not of separate living, for want of which the decree for an award was reversed. In both cases there were also factual differences from the present one. In the Fullhart, Tayman and Harper cases, the wife had returned to her husband and condoned his offense or continued living with him as wife. In Collins v. Collins, the parties actually lived in different houses. The equivocal statement in 2 Bishop, Marriage, Divorce and Separation (1891) § 910, is not supported, on the facts or holdings, by any of the authorities cited. Cf. Cowan v. Cowan, 1887, 10 Colo. 540, 550–553, 16 P. 215, 220, 221. It is in fact contradicted by the author's own statement in the same treatise, Vol. 1, § 1676, cf. also § 1672, unless a greater showing of separate living is required for an award of temporary alimony than to show desertion as cause for divorce a vinculo. And cf. note 21, infra. In addition to the cases cited by appellee, Adams v. Adams, 1892, 49 Mo.App. 592, pages 599–601, contains language equivocally favorable to his position, but entirely unnecessary to the decision (which rested primarily upon other clearly adequate grounds) and was based on a bill of exceptions which did not show whether the parties were living under one roof or two, or otherwise separately. The force of the Missouri dicta is completely broken by the ruling in McCloskey v. McCloskey, 1896, 68 Mo.App. 199, sustaining an order permitting both parties to continue to reside in the family home pendente lite, at least so long as the husband, who owned the house, did not eject the wife; and by the decision in Lipp v. Lipp, Mo.App., 1938, 117 S.W. 2d 364.

18 Klemme v. Klemme, 1890, 37 Ill.App. 54; Smith v. Smith, 1910, 156 Ill.App. 176. Whether such a statute requires clearer showing of separate living than

when there is none, it is not necessary to decide.

19 Cf. note 9, supra.

20 Cf. note 21, infra.

21 Cowan v. Cowan, 1887, 10 Colo. 540, 16 P. 215; McCloskey v. McCloskey, 1896, 68 Mo.App. 199; Lipp v. Lipp, Mo.App., 1938, 117 S.W.2d 364; Anderson v. Anderson, 1902, 137 Cal. 225, 69 P. 1061; Herrett v. Herrett, 1910, 60 Wash. 607, 111 P. 867; Pinkinson v. Pinkinson, 1920, 91 N.J.Eq. 281, 109 A. 731, affirmed, 1921, 92 N.J.Eq. 669, 113 A. 143; Stein v. Stein, 1879, 5 Colo. 55; Graves v. Graves, 1906, 88 Miss. 677, 41 So. 384; Rector v. Rector, 1911, 78 N.J.Eq. 386, 79 A. 295; Baker v. Baker, 1921, 99 Or. 213, 195 P. 347; Chandler v. Chandler, 1922, 132 Va. 418, 112 S.E. 856. Cf. Fleegle v. Fleegle, 1920, 136 Md. 630, 110 A. 889; 1 Nelson, Divorce and Separation § 71; 2 Bishop, Marriage, Divorce, and Separation (1891) § 910.

As to the specific point, we have relied upon authorities (1) granting support pendente lite in a suit for divorce (Cowan v. Cowan, McCloskey v. McCloskey, Lipp v. Lipp, and Anderson v. Anderson, supra); (2) granting maintenance, where "separate living" is required by statute or under common law (Herrett v. Herrett, Pinkinson v. Pinkinson, supra); and (3) holding that desertion or abandonment occurs despite living under the same roof at the time of suit or during the prescribed statutory period (Graves v. Graves, Rector v. Rector, Baker v. Baker, Chandler v. Chandler, and, apparently, Fleegle v. Fleegle, supra). We are unable to see that any substantial distinction exists, for the purposes of this issue, by reason of the differences in the character of the relief sought. Whether that be divorce, absolute or limited, separate maintenance, or support, suit money and counsel fees pendente lite, the issue is whether the parties are or were living together as husband and wife or separately in some other manner. In each of the cases cited it was necessary to show withdrawal from matrimonial relations, which was found to exist despite continued residence of both parties under the same roof, except possibly in the Anderson case where the inference appears justifiable that this was the situation. The wife and children continued to occupy the family dwelling and it does not appear that the

and for the other circumstances of the case, we cannot assume that it was not the controlling factor in the judgment of the court when it made the order denying the relief. If so, its refusal on this ground to grant any relief was error. While our statute [22] invests the court with discretion as to awarding alimony pendente lite, it is not an arbitrary, but a judicial discretion.[23] It is an abuse of discretion to deny relief to which one is entitled otherwise for a reason which is clearly erroneous.[24]

But assuming that the court properly regarded sharing the single roof as merely one fact which, in connection with others, justified denying relief, we are confronted with two questions: (1) whether the court was at liberty, in its discretion, to refuse to make any order, irrespective of the amount awarded; (2) whether the facts were such as to demonstrate clear need for support additional to that supplied by appellee, so that there was an abuse of discretion in not granting it. The first relates to the method by which the support is to be secured; the second to its amount. We think there is a clear distinction in the scope of the court's discretion concerning these two factors. As to

the second, it is unquestionably broad, not lightly to be modified. Regarding the first, it is much more restricted.

■ We do not hold that there are no circumstances in which it is proper to refuse an award. It has been held appropriate to deny relief where the application is not heard until after a hearing on the merits terminating adversely to the wife, where the bill is filed not in good faith, but merely for the purpose of mulcting the husband of money, and for other causes.[25] Some cases take the view that when the wife has separate funds and income of her own, clearly and undisputedly sufficient for her support according to requirements of her station in life, the court may refuse to make an order on the husband pendente lite, even though her bill state a cause of action for divorce.[26] We express no opinion as to this,[27] since the facts here clearly show that the wife is without means of her own and has little, if any, earning capacity. The usual rule, in such circumstances, providing the bill states a cause of action and is filed in good faith, is that an order will issue almost as a matter of course.[28] It is impossible to reconcile this with the idea that the court has an abso-

---

husband resided elsewhere. In the Rector case, the court said: "the true rule * * * is that wherever one spouse, without justifiable reason, refuses for the statutory period to have sexual intercourse with the other, and withdraws from all other marital duties than merely living under the same roof in the same relationship that could exist between a man and his housekeeper or a woman and her boarder * * * the desertion exists". 1911, 78 N.J.Eq. at page 407, 79 A. at page 303. Cf. Wood v. Wood, 1925, 97 N.J.Eq. 1, 128 A. 418. In the Lipp case the court held: "We conclude the pleadings and proof warranted the court in finding that plaintiff and defendant were not living together as husband and wife but separate and apart from each other, notwithstanding they were sheltered by the same roof. Upon such finding the law does not preclude allowance of suit money." Mo.App., 1938, 117 S.W.2d at page 366.

[22] D.C.Code (1929) tit. 14, § 70.

[23] Lesh v. Lesh, 1903, 21 App.D.C. 475, 486; 19 C.J. § 499. Cf. Cissell v. Cissell, 1932, 61 App.D.C. 271, 61 F.2d 679; Tolman v. Tolman, 1893, 1 App.D.C. 299, 311, the latter recognizing clearly the distinction between the discretion to deny any award, and that as to the *amount* of the award. The Lesh case held that

Section 75, Title 14 of the D.C.Code (1929), was intended to enlarge, not restrict, the power of the court to make an award, and does not limit the application of the Tolman case.

[24] Cf. Cissell v. Cissell, 1932, 61 App. D.C. 271, 61 F.2d 679.

[25] See Adams v. Adams, 1892, 49 Mo. App. 592, and authorities cited at pp. 600–601. We do not indicate approval of the specific rulings, as the facts existing here do not involve the issue presented except as indicated above, note 17, with respect to the Adams case.

[26] Cf. 19 C.J. §§ 517, 653, and authorities cited.

[27] The question has been reserved specifically in this jurisdiction. Reed v. Reed, 1922, 52 App.D.C. 35, 36, 280 F. 1009, 1010. Cf. Lesh v. Lesh, 1903, 21 App.D.C. 475, 485.

[28] Cf. 19 C.J. §§ 498 n. 56, 510, 517 n. 60, 519; Tolman v. Tolman, 1893, 1 App.D.C. 299, 311; Cowan v. Cowan, 1887, 10 Colo. 540, 545, 16 P. 215, quoting Daniels v. Daniels, 1886, 9 Colo. 133, 10 P. 657; Adams v. Adams, 1892, 49 Mo.App. 592, 597, 599, 600; McCloskey v. McCloskey, 1896, 68 Mo.App. 199, 202; and notes 29 and 31, infra. But see Stark v. Stark, 1905, 115 Mo.App. 436, 440, 91 S.W. 413, 414.

In the Adams case, the court says the

lute discretion in the matter. The almost uniform practice indicates that it is much more limited. Presumably the court below based its action on the admitted facts that the wife has shelter in the jointly owned home, despite the alleged pressure upon her to leave it, that the husband brings in food for her, and makes small payments of money to her periodically, regarding these provisions both as dispensing with the necessity for an order and as adequate.

We are not concerned at this point with the question of adequacy, but only with the necessity for an order of some kind. There is strong authority for the view that it is not a sufficient answer to a petition for maintenance pending litigation that the husband is supplying his wife with support.[29] On alleging cause for divorce, and showing need for support, particularly if the wife be without resources of her own, she is said to be entitled to an order on three considerations: (1) to avoid endless bickering, altercations and confusion among the parties and in the community; (2) because, without an order, there is no certainty that the provision will be continued; and (3) because she is entitled to some voice in the selection of the kind and quality of the articles she needs, and that without having to barter the husband's credit for them when he has foreclosed, practically speaking, the opportunity to utilize it.[30] There is danger, also, that even if the husband's voluntary provision is continued, it will be upon as niggardly a scale as possible, though this goes more properly perhaps to the question of adequacy than to that of necessity. In the light of these authorities and the persuasive reasons behind them, we think appellant was entitled to an order for support pendente lite. The discretion of the court as to the amount of support

award is made almost as a matter of course "unless certain things which preclude that right on settled law are made to appear", enumerating some of these, and "the general rule is that the only question which is considered is the amount which ought to be awarded." 49 Mo.App. at pages 599 and 597. The right is based on the wife's general right to sustenance until she forfeits it. 49 Mo.App. at page 597. In Stark v. Stark, supra, however, involving only suit money, the court distinguishes "the old rule" and the modern. The former, it is said, grounded the wife's right to an allowance on the merger of her estate in the husband's at marriage and her consequent helpless financial condition. With emancipation the reason for the rule is said to disappear, and the allowance is made "only upon the necessities of the case", and not as a matter of course or absolute right. Possession of sufficient means of her own is regarded as justifying denial of an award, but if these are exhausted it is said the court has not only the power, but the *duty* to make an award. 1905, 115 Mo.App. at pages 441, 444, 91 S.W. at pages 414, 416.

[29] Pinckard v. Pinckard, 1857, 22 Ga. 31, 68 Am.Dec. 481, per Lumpkin, J., cited and approved in Cowan v. Cowan, 1887, 10 Colo. 540, 16 P. 215; Anderson v. Anderson, 1902, 137 Cal. 225, 69 P. 1061. Cf. Herrett v. Herrett, 1910, 60 Wash. 607, 111 P. 867. Magrath v. Magrath, 1870, 103 Mass. 577, 4 Am.Rep. 579, semble. But see McCloskey v. McCloskey, 1896, 68 Mo.App. 199.

In the Anderson case the court said: "The authority of the court to direct the husband to pay a definite amount as alimony is not devested by the fact that he is paying all the bills contracted by the wife, or by his declaration that he is willing to pay them during the prosecution of the action. The wife is *not required to depend upon the will or caprice of the husband* for her support, *or to satisfy tradesmen* and others from whom she is to obtain the necessary articles for her support and comfort *that the husband will pay for them;* but she is entitled to receive from him a definite amount of money with which to supply her wants as she may desire, and to have the power of disbursing it as she may choose." [Italics supplied]

In the McCloskey case the court set aside an order for payment of $30 weekly for maintenance, on a showing that the husband was paying grocery, gas and coal bills; but affirmed the allowance for suit money and remanded the cause for retrial as to maintenance, holding that the wife was entitled to an allowance for clothing and "incidental expenses" which were not shown to be covered by the husband's voluntary provisions. The wife was said not to be required to buy clothing on the husband's credit, he having notified merchants not to sell to her except upon his order.

In the Magrath case the court held the wife's suit for divorce for desertion was not defeated merely by a showing that the husband supported her.

[30] See the cases cited in the preceding note.

and the methods by which it is to be provided is broad and one, as stated previously, with which we would not lightly interfere.[31] As to the necessity for an order, the discretion is more limited, and in our view it is abused when relief in the circumstances shown here is denied entirely, so as to leave a wife without resources of her own wholly at the husband's mercy during a possibly long period of litigation, not only as to the amount and kind of support she will receive, but also as to the continuance of any support. We think appellant was entitled to an order, even if that were limited, in the court's discretion, to the support she had been receiving by the appellee's voluntary contribution.

■ This brings us to the question of adequacy. The facts shown here are such that we think an additional award would have been proper. Appellant is entitled, of course, not merely to subsistence, but to maintenance in the manner which the station in life of the parties makes appropriate.[32] Appellee's admitted resources and income are more than adequate to sustain them in accordance with the usual scale of living maintained by reasonably successful attorneys in this community. His commendable desire for financial independence in age and disability cannot outweigh appellant's present necessities of living as measured by this standard. Apart from shelter, the support which has been given since last September hardly meets this requirement.[33] If the discretion were ours

principally, we should regard it as proper for the wife to select her own food, to have some allowance made for clothing, provision for which appears to have been wholly lacking here, and to have a more liberal allowance for the many incidental expenses required in modern living. But the discretion is vested primarily in the trial court, both as to the amount and kinds of support and as to the methods by which it shall be supplied.[34] It will be necessary for the trial court to consider the matter again, in view of the conclusions we have reached on other issues in the case. Therefore we shall not attempt to prescribe what order shall be made.

■ The award of counsel fees pendente lite is governed by considerations somewhat different from those relating to support money, and the settled practice in this jurisdiction has been to leave this largely within the discretion of the trial court, not only as to the amount of the award, but also as to the necessity for it and the time when it shall be made, whether during the pendency of the proceeding or at the close thereof, when the value of the services rendered can be estimated more accurately.[35] We do not by this opinion intend to disapprove the established practice as to the time of awarding attorneys' fees.

This renders it unnecessary, perhaps inappropriate, for us to consider the questions raised by the petition filed in this court and the answer thereto. The petition therefore is denied, the order below

---

[31] It is principally in this respect that the almost hackneyed language as to discretion of the trial court and interference therewith on appeal is used. The vast majority of appeals are taken to secure reversal or reduction of an award. Rarely is relief denied in toto. The language, in its usual setting, is thus a bulwark of the wife in her right to support, not a loophole or breach for escape of the derelict husband from his duty.

[32] The amount is determined according to two factors: (1) the needs of the wife; (2) the financial ability of the husband. 2 Schouler, Marriage, Divorce, Separation and Domestic Relations, 6th ed. 1921, §§ 1770, 1771; 19 C.J. §§ 517, 518, 653; Herrett v. Herrett, 1910, 60 Wash. 607, 111 P. 867; Tolman v. Tolman, 1893, 1 App.D.C. 299.

[33] In McCloskey v. McCloskey, 1896, 68 Mo.App. 199, 204, 205, though the court accepted the view that adequate voluntary provision by the husband dis-

penses with the necessity for an order, it was held that the mere fact that such provision is adequate in some respects does not dispense with the necessity for an order as to others in reference to which it appears that no or only inadequate provision is made, a qualification which renders dubious the court's basic position concerning the *necessity* for an order in the first place.

[34] Cf. Cowan v. Cowan, 1887, 10 Colo. 540, 16 P. 215, where the order was so drawn as to permit the husband conveniently to make arrangements for supplying necessaries on his credit, with provision for him to continue occupancy of a room in the family dwelling, the remainder of which was assigned to the wife and children, in addition to a monthly payment of cash for incidental expenses.

[35] Myers v. Myers, 1925, 55 App.D.C. 224, 4 F.2d 300; Shellman v. Shellman, 1938, 68 App.D.C. 197, 95 F.2d 108.

reversed, and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.

Order reversed and cause remanded.