Austin R. KNAUSS, Plaintiff-Respondent,

v.

Nellie Mae KNAUSS, Defendant-Appellant.

No. 8695.

Springfield Court of Appeals.

Missouri.

Feb. 28, 1968.

Claude T. Wood, Richland, J. W. Grossenheider, Lebanon, for defendant-appellant.

John F. Low, Low & Honssinger, Lebanon, Theo. G. Scott, Buffalo, for plaintiff-respondent.

HOGAN, Presiding Judge.

This is an appeal by the defendant, Nellie Mae Knauss, from an order allowing alimony pendente lite, including suit money and attorneys' fees. She contends that the allowances made are so grossly inadequate as to constitute an abuse of the trial court's discretion.

The parties are both osteopathic physicians. They had been married almost 26 years at the time this matter was heard on March 25, 1967. They are the parents of five children, David, 23, who was in military service at trial time; Daniel, 21, a college senior; Mary Kay, also a college student; Karen, 17, a high school student; and Michael, 13, a seventh grader. The sense of the record is that about the middle of February 1965 the plaintiff and defendant separated by dividing the family home into a "side" for the plaintiff and a "side" for the defendant. Except for David, the children continue to live in the family home; they are spoken of as being in the defendant's custody.

On December 1, 1965, plaintiff filed a petition for divorce. After some preliminary skirmishing, defendant filed an answer and counterclaim on October 11, 1966. The counterclaim seeks partition of certain real property owned by the parties as tenants by the entirety "if a divorce be awarded to either of the parties in this action." The pleadings were thereafter amended at various times, and on March 25, 1967, a year and four months after the original filing, the case finally came on for a hearing on the matter of temporary allowances.

The evidence indicates that Dr. A. R. Knauss, the plaintiff, is a successful physician who maintains offices at Lebanon and Springfield, Missouri. His gross income, as reflected by his federal tax returns, has risen from about $8,900 in 1964 to an amount in excess of $37,000 in 1966. His gross receipts from both offices were running in excess of $3,000 per month for the first two months of 1967, and at trial time he had two bank accounts totaling $10,-852.82. There was no evidence indicating what his fixed liabilities were, if any, but plaintiff testified that in 1965 and 1966 he repaid a loan of $8,000; that his current tax liability "would be close to" $8,000, and that he owed his mother $6,400 which she had advanced for Daniel's education.

At the time the parties separated, so plaintiff testified, he started paying defendant $360 per month. In October 1966, he reduced this amount to $260 per month. Plaintiff maintained the family home, engaged one domestic servant on behalf of the defendant, and so far as he knows defendant's food, her personal clothing and her private telephone are her only expenses not paid by him. It was plaintiff's testimony that he was providing regularly for his children. He was sending Daniel $50 per month, though Daniel's tuition and

board at school were being provided by plaintiff's mother. Plaintiff had given Mary Kay $600 for tuition, board and incidental expenses when she started school, had bought her a $175 wardrobe, and was sending her a regular allowance of $50 per month. Karen, the high school senior, was receiving $30 per month and was living at home. Michael, their seventh grader, was being given money as he asked for it, and the plaintiff estimated that Michael had received $130 in cash in the year 1967 alone. Plaintiff indicated that he was making all these expenditures in behalf of his family voluntarily, and that he intended to continue doing so.

The defendant testified that prior to the time she and plaintiff separated—until he "started hooking the door," as she put it— she assisted her husband with his practice. Defendant "did anything there was to do," because she was an active physician. She testified at trial time that she was in very poor health, however, and that she needed medical attention. On being asked how much the proposed attention would cost, Mrs. Knauss was unable to say.

The defendant was of the opinion that Mary Kay should have an allowance of $100 per month. Being asked why, defendant responded: "Well, she has a lot of expenses, just—you have to buy food, extra food if you are in college and she has no clothing budget. And she has to buy some clothing and she is taking courses that take extra books all of the time. And, well, a girl just uses some things—personal things, that $100.00 without a clothing budget, is not sufficient even." Defendant estimated that Karen, the high school senior, should have $75 per month, on the following basis: "She has a lot of school expenses. She is very popular and active and, well, there is expenses of the cafeteria, and, well there is just an unlimited number of donations in a school and everything, she has her own clothing to buy and she is active in Church, which takes money. She goes on School trips, she is active in so many different

things, there is no end to the expense in high school." Mrs. Knauss also believed that she should have a discretionary allowance for her seventh grader in the amount of $50 for the following reason: "Well, Michael is very active in school and sports, and his father encourages him to participate in expensive sports, such as bowling, car racing and he goes to all of the games. Well, he is in football, basketball, track and all of the things that take money, besides being active in two different churches and having quite a bit of expense that goes with that, and he has to have clothing in order to participate in those things." Defendant's further estimate of her needs was that she should have $50 per week minimum for groceries, $3 per week as a "telephone" allowance, $25 per week to replenish her wardrobe, $10 per week for dry cleaning and laundry, and $10 per week as a transportation allowance because she could not drive a car. In addition, defendant said she needed to have the house papered, needed some new shades and curtains, some new furniture, a vacuum cleaner, a new refrigerator, a new sewing machine, a new iron, a deep freezer, and perhaps a new washer and dryer.

Testimony was also given to establish the proper amount of attorneys' fees. Mr. Wood, one of the defendant's attorneys, testified that he and Mr. Grossenheider both represented the defendant. Mr. Wood said he had had several conferences with the defendant in his office, that he had had several conferences with the defendant and co-counsel in defendant's home, that he had prepared motions and filed them, and that he had prepared responsive pleadings and filed them. Mr. Wood had entered one appearance on March 18, 1965, and was appearing at trial time. Defendant had told Mr. Wood that she was unable to pay anything. Counsel had discussed the "probable taking" of depositions in Springfield, Mountain Grove, and Lebanon, Missouri. Mr. Wood was of the opinion that an allowance of $250 would be required to take the necessary depositions, and that a rea-

716

sonable fee for the work done so far would be $500 for each attorney.

Upon this evidence, the trial court entered an order requiring plaintiff to pay defendant the sum of $400 per month as alimony pendente lite, and further requiring him to pay each attorney $400 as temporary attorneys' fees, and $125 as suit money. The record indicates this order has been complied with. As stated in the brief, the appellant's argument is that the allowances are inadequate because, under the uncontroverted evidence, plaintiff had the means and ability to pay considerably more, and the defendant and her children needed a substantially greater amount.

■ The general rules which govern in a case of this kind are so well known that they need not be repeated at length. Whether or not allowances pendente lite are to be made in a divorce case, and if so the amount thereof, are matters addressed to the sound discretion of the trial court, and unless it clearly appears that such discretion has been abused the appellate courts do not interfere. State ex rel. Gercke v. Seddon, 93 Mo. 520, 523, 6 S.W. 342, 343; Kaye v. Kaye, Mo.App., 327 S.W.2d 496, 500 [3]; Rush v. Rush, Mo.App., 284 S.W. 2d 53, 54.

■ There is so little hard, factual evidence in this record that the case is difficult to review. The appellant argues, among other things, that her allowance for alimony pendente lite is insufficient and should be increased because the plaintiff could afford to pay more, the children need more money than they are receiving, and because her living expenses are not being adequately cared for. The difficulty with these arguments is that we cannot tell from the record filed here what the plaintiff's true financial condition is, nor do we have anything beyond the defendant's vague estimates to show what her needs or those of her children are in the circumstances. Doubtless a court may require a father to furnish more than the bare necessities of

life when it makes an allowance pendente lite in a divorce case, and it has often been said that the court should make an award in keeping with the parties' usual standard of living prior to their separation. McCullough v. McCullough, Mo.App., 402 S.W.2d 623, 628–629 [2] [3]; Stauffer v. Stauffer, Mo.App., 313 S.W.2d 597, 601 [5]; Montgomery v. Montgomery, Mo.App., 257 S.W.2d 189, 197–198 [8, 9]. Nevertheless, before an award of alimony pendente lite can be criticized as being incommensurate to the parties' standard of living or station in life, there must be some positive showing what their station and standard of living was, and some evidence of the actual cost of necessities and privileges at that standard or station. McCullough v. McCullough, supra, 402 S.W.2d at 628–629. What we have in this record is evidence that in the calendar year 1966 Dr. A. R. Knauss had a rather large income, by community standards; little or no consideration was given to his day-to-day expense or fixed obligations, and we have so incomplete a picture of his total financial condition that we cannot say, as appellant urges, that he could readily afford to pay more. See McCarthy v. McCarthy, Mo.App., 329 S. W.2d 236, 241 [7]. We do have the defendant's testimony that she has no income or separate means, but we have only her speculation as to the children's individual needs and the family's cost of living. The evidence is so vague that we cannot say the award is out of keeping with the plaintiff's ability to pay, that it is insufficient to meet the defendant's needs and those of her children, or that it is incommensurate with the parties' standard of living.

■ On the other hand, we are impressed with the evidence that plaintiff has continued to provide the defendant with a home since their separation, and with the evidence that he has continued to provide quite adequately, if not extravagantly, for his children. We do not say or intimate that a plaintiff husband's voluntary provision of support necessarily bars an allowance of alimony pendente lite. Doubtless

the wife is entitled to the security of an order of the court fixing the husband's legal obligation, even though support is being provided voluntarily. Pedersen v. Pedersen, 71 App.D.C. 26, 107 F.2d 227, 235–236 [10–12]. Nevertheless, the allowance of alimony pendente lite rests primarily and fundamentally upon the necessities of the particular case, Stauffer v. Stauffer, supra, 313 S.W.2d at 601–602 [7–9]; Stark v. Stark, 115 Mo.App. 436, 440–442, 91 S.W. 413, 414–415, and if it appears that a husband is voluntarily providing a home and support for his family, that fact is entitled to consideration in determining the amount to be allowed. Bingham v. Bingham, 325 Mo. 596, 603–604, 29 S.W.2d 99, 101 [2–5]; Herbig v. Herbig, Mo.App., 245 S.W.2d 455, 457 [5]; McCloskey v. McCloskey, 68 Mo.App. 199, 204–205; 27A C.J.S. Divorce § 209c, pp. 917–918. In this instance, at the time of trial, the parties' eldest child was in military service; two other children were away from home at school, and the expense of their education was being borne or provided for by the plaintiff. The defendant and the two younger children were being provided with a home, and the only expense being borne exclusively by the defendant was that necessary for food, her own clothing, and her private telephone. We cannot say that $400 per month is inadequate for those limited purposes.

■ It must also be remembered that these allowances pendente lite are by nature and definition *temporary*, subject to being increased as the situation may require. McCarthy v. McCarthy, supra, 329 S.W.2d at 241 [10]; Stark v. Stark, supra, 115 Mo.App. at 444, 91 S.W. at 415–416. If, during the course of this litigation, the defendant's shelter should become entirely inadequate, or if the children's needs should increase, or if defendant's health becomes such that medical attention is required, and some reasonable showing of the amount necessary can be made, then these additional needs may be dealt with as they arise, upon proper motion and notice. In any event, upon the record presented, we see no basis for the appellant's contention that the allowance made for her support and that of the children is inadequate, much less any reason to hold that there has been an abuse of judicial discretion.

■ The appellant also complains that the allowance made to her for attorneys' fees and suit money was inadequate. We decline, at this point, to enter into a discussion of the value of attorneys' services generally. Again, this allowance is temporary and provisional, pending disposition of the cause on its merits. Gross v. Gross, Mo.App., 319 S.W.2d 880, 883–884 [4, 5]. The testimony offered by counsel concerning the reasonable value of the services to be performed by him and his co-counsel was advisory and helpful, but it was not binding on the trial court in fixing the amount to be allowed. Bucknam v. Bucknam, 347 Mo. 1039, 1045–1046, 151 S.W.2d 1097, 1101 [8]. As with the other allowances comprehended within the term alimony pendente lite, the amount to be allowed for attorneys' fees and suit money is a matter which must be left largely to the discretion of the trial court, and in this instance we see no reason whatever to interfere.

For the reasons indicated, the judgment is affirmed.

STONE and TITUS, JJ., concur.