## LILLIS *v.* LILLIS

[No. 383, September Term, 1963.]

*Decided July 6, 1964.*

The cause was argued before HENDERSON, PRESCOTT, HORNEY and SYBERT, JJ., and KEATING, JR., J., Associate Judge of the Second Judicial Circuit, specially assigned.

*William E. Brooke* for the appellant.

No brief and no appearance for the appellee.

SYBERT, J., delivered the opinion of the Court.

On August 23, 1963, the appellant, Thomas A. Lillis, filed a bill in the Circuit Court for Prince George's County against his wife, Norma L. Lillis, the appellee, in which he sought a divorce *a vinculo matrimonii,* alleging eighteen months' voluntary separation, Code (1963 Cum.Supp.), Art. 16, sec. 24. A decree *pro confesso* was taken against the defendant wife and

the testimony of the husband and a corroborating witness was taken before an examiner. However, after reviewing the testimony, the Chancellor, in a memorandum, denied a decree of divorce, stating that there had been "too much opportunity to cohabit", but authorized the taking of additional testimony, if desired. Subsequently, the husband, the wife, and another corroborating witness gave further testimony. However, by decree of November 14, 1963, the Chancellor, upon consideration of all the testimony taken before the examiner, again denied a divorce. The plaintiff husband appeals. The wife did not contest the suit below, nor did she file a brief or argue the case in this Court.

The parties were married on April 7, 1956, in Prince George's County. They have no children. Shortly after the marriage they acquired a house in Beltsville, in the same county, where they lived together until February, 1962. Both parties testified that they had had marital difficulties for two or three years before that time, and that they had had no sexual relations since prior to June, 1961, when Mrs. Lillis had a miscarriage. They both testified that in February, 1962, they decided to separate. A settlement was agreed upon and the husband had papers prepared to give up his business in Maryland. Having a reserve commission in the armed services, he went back into the service and was sent to Orlando, Florida. The wife, who worked in Washington, D.C., continued to live in the Beltsville house.

The husband was discharged from the service after he had been in Florida for a little over a month, but he obtained a job and remained there for approximately six months. In July, 1962, his father, who lived in Pennsylvania, became seriously ill. The husband gave up his job in Florida in August, 1962, and went to Pennsylvania to be with his father. In the same month he returned to the house in Beltsville, where the wife was still living. The husband testified that he did so "mainly because of the money problem", since he was unemployed.

Both parties occupied the Beltsville house for approximately six weeks, until October, 1962, when the wife moved to St. Louis, Missouri. She testified that she had planned to move to St. Louis when the appellant returned to the house in Belts-

ville, but was delayed when she suffered a serious injury to her finger while at work in Washington, D.C. She said she instituted proceedings under the Washington workmen's compensation law and was required to remain in the area to receive medical treatment thereunder. She testified that she remained in the same house as her husband during this period as "a matter of financial convenience". Immediately after the wife left Maryland to go to St. Louis the parties had an attorney prepare a separation agreement, formalizing their prior understanding, which they signed in October, 1962. Both parties testified that they did not have sexual relations during the six weeks' period when both occupied the house in Beltsville, the husband having slept in the den and the wife in the master bedroom, and this was corroborated to some extent by other testimony. After the wife left, Mr. Lillis remained in the home.

Mrs. Lillis remained in St. Louis until June, 1963, when she returned to Maryland to clear up matters regarding further medical treatment for the previous injury to her finger. For a period of approximately two weeks she and her husband again occupied the house in Beltsville at the same time. As before, the reason asserted for their living in the same abode was that it was "a matter of financial convenience". Both parties testified that they did not have sexual relations during the two weeks' period. The wife then moved to Fort Wayne, Indiana, where she remained until August, 1963, when she returned to Maryland for an operation on her finger, again moving into the Beltsville house. However, upon the wife's return on this occasion, the husband immediately moved out of the house and took up residence in College Park, Maryland. Thereafter, according to the testimony, Mr. Lillis returned to the house in Beltsville only to do work thereon in preparation for its sale, pursuant to the separation agreement.

Article 16, sec. 24, *supra,* under which this suit was instituted, provides, *inter alia,* as follows:

> "* * * the court may decree a divorce a vinculo matrimonii for the following causes, to wit: * * * fifthly, when the husband and wife shall have voluntarily lived separate and apart, without any cohabita-

tion, for eighteen consecutive months prior to the filing of the bill of complaint * * *."

The only question which it is necessary to answer in this appeal is whether, under the facts as summarized above, the parties have for the required period "lived separate and apart, without any cohabitation" within the meaning of the statute.

This case, requiring interpretation of the "separate and apart" phrase of the voluntary separation provision, is one of first impression in Maryland. In constructive desertion cases, as distinguished from voluntary separation cases, this Court has added a gloss to that part of Art. 16, sec. 24, which establishes desertion as a ground for divorce, by holding that the complainant's testimony, sufficiently corroborated, showing an unwarranted refusal of sexual relations for the required period, even though the parties lived in the same abode, is enough to warrant a divorce for desertion. See *Hodges v. Hodges,* 213 Md. 322, 131 A. 2d 703 (1957); *Fleegle v. Fleegle,* 136 Md. 630, 110 Atl. 889 (1920). But the desertion clause of sec. 24 does not require a showing that the parties have "lived separate and apart, without any cohabitation", as is true of the voluntary separation clause. Because of the different phraseology, we do not think that the gloss of the constructive desertion cases may be applied to voluntary separation cases.

Our research indicates that virtually all the jurisdictions in this country which have voluntary separation provisions similar to ours, and which have had occasion to interpret them, have denied divorces where the parties have lived in the same house during part or all of the critical period, even though discontinuance of sexual relations was proved. The rule generally followed in those jurisdictions is stated in 17 Am. Jur. *Divorce,* sec. 185, as follows:

> "Where the statute defines the ground for divorce as a 'living separate and apart' for a certain period, the fact that while the parties have become estranged they continue to live under the same roof precludes a finding that they have lived separate and apart. The discontinuance of sexual relations *is not in itself a liv-*

ing 'separate and apart' within the meaning of some statutes, and a divorce will be denied where it appears that during the period relied upon the parties had lived in the same house. It has been said that what the law makes a ground for divorce is the living separately and apart of the husband and wife continuously for a certain number of years. This separation implies something more than a discontinuance of sexual relations * * *. It implies the living apart for such period in such a manner that those in the neighborhood may see that the husband and wife are not living together * * *."

To the same effect is 27A C.J.S., *Divorce,* sec. 42(b) : "The term 'living apart' as used in the statutes means living in a separate abode, and where the parties live in the same house, they ordinarily are not living separate and apart within the meaning of the statutes, even though they occupy different rooms. * * * The mere fact that sexual relations cease is not a living apart from each other. * * *" See also Annotations, 51 A.L.R. 763, 768-769; 111 A.L.R. 867, 871-872; 166 A.L.R. 498, 508-509.

The text writers also agree that the parties cannot live under the same roof and sue for divorce on the ground that they have been living "separate and apart", even though they do not engage in sexual relations. "Usually the courts do not accept living in the same abode as living 'separate and apart' * * *. The mere discontinuance of sexual relations is not sufficient * * *", Keezer, *Marriage and Divorce* (3rd ed., 1946), sec. 455, p. 507. "There must be separation in fact where the statute, by its terms, applies only if the parties are 'separated' or 'living apart' * * *. Resumption of cohabitation during the statutory period interrupts the running of the statute and prevents the accrual of a cause of action", 1 Nelson, *Divorce and Annulment* (2nd ed., 1945), sec. 4.46, pp. 152-154.

For cases from other jurisdictions, involving statutes that are similar to the voluntary separation clause of Art. 16, sec. 24, which hold that parties to a divorce suit are not "living apart" or "living separate and apart" when they live in the same abode,

even assuming that they do not engage in sexual intercourse, see *Caine v. Caine*, 79 So. 2d 546 (Ala. 1955); *Jordan v. Jordan*, 210 P. 2d 934 (Ida. 1949); *Lowe v. Lowe*, 213 Ill. App. 607 (1919); *York v. York*, 280 S. W. 2d 553 (Ky. 1955); *Arnoult v. Letten*, 99 So. 218 (La. 1924); *Richardson v. Richardson*, 127 S. E. 2d 525 (N. C. 1962); *Christiansen v. Christiansen*, 28 A. 2d 745 (R. I. 1942); *Neff v. Neff*, 192 P. 2d 344 (Wash. 1948). Only the District of Columbia appears to hold otherwise, see *Boyce v. Boyce*, 153 F. 2d 229 (C. A. D. C. 1946), and *Hurd v. Hurd*, 179 F. 2d 68 (C. A. D. C. 1949); but those cases involve a statute that does not expressly require that the parties "live apart" or "live separate and apart", in order to be entitled to a divorce on the ground that they have voluntarily separated for a certain period of years.

In view of the overwhelming weight of authority, we are constrained to hold that since the parties to the instant suit intermittently lived in the same house during the eighteen months prior to the institution of suit, they were not living "separate and apart, without cohabitation", within the meaning of Art. 16, sec. 24. Even if it be assumed that there was sufficient evidence to establish that they had not engaged in sexual relations during the periods in which they occupied the same abode, that factor would not be controlling. Thus the lower court properly refused to grant a divorce and the decree appealed from will be affirmed.

> *Decree affirmed; appellant to pay the costs.*