## CLARA JACKSON *v.* OLIVER JACKSON

[No. 309, September Term, 1971.]

*Decided December 22, 1971.*

The cause was argued before ANDERSON, POWER and CARTER, JJ.

*Irving B. Klitzner,* with whom were *Cweiber & Edelstein* on the brief, for appellant.

*Jay M. Caplan* for appellee.

CARTER, J., delivered the opinion of the Court.

This is an appeal by the wife (appellant) from a decree granting a divorce a vinculo to her husband (appellee) on the ground that the parties had lived separate and apart without any cohabitation and without interruption for five years. *Md. Code* Art. 16 § 24. The decree also awarded the appellant permanent alimony, custody of and support for the two minor daughters of the parties, and counsel fees. The appellant contends that the

evidence was legally insufficient to justify a divorce on the grounds alleged.

## FACTS

The evidence established the following pertinent facts. The parties were married on March 21, 1961. The husband was a career Army officer with the rank of Captain. The couple had two daughters seven and ten years of age. The family lived at Fort Benning, Georgia, from 1963 until July 1965 when the husband was assigned to Vietnam and the wife and children moved to the home of her mother Mrs. Emma Johnson at 2030 East Lanvale Street in Baltimore, Maryland. In November 1965 while the husband was in Vietnam, he was notified that his wife was in critical condition as a result of an automobile accident. He was immediately granted a thirty-day emergency leave and departed for Baltimore. Upon his arrival, he found his wife in serious condition in the hospital. He then stayed with his children and his mother-in-law in her home. When it became apparent his wife's condition would require extended hospital care, he was reassigned to Fort Holabird near Baltimore as a "compassionate reassignment." He remained at Fort Holabird from December 1965 until September 1967. While he was stationed at Fort Holabird, he stayed at his mother-in-law's home every weekend. In the latter part of 1966, the appellant visited at her mother's home over Saturday nights and returned to the hospital on Sunday. During her visits the appellee would often transport his wife to and from the hospital. Later as her condition improved, she spent more time at her mother's home. During this period when both parties were staying part time at the wife's mother's home, the appellee slept in the basement and his wife slept upstairs. This arrangement was a matter of choice with the husband. The appellant had requested that he occupy her bedroom with her but the appellee refused. Later she asked him to have intercourse with her but he again refused. Even though immediately after the accident she was a quadriplegic (paralyzed from

the neck down) and later a paraplegic (paralyzed from the waist down) she was physically capable of intercourse when she requested her husband to have sexual relations with her. In September 1967 the appellee requested that he be assigned to Fort Bragg, North Carolina, in preparation for his return to Vietnam. In January 1968, he left Fort Bragg for Vietnam where he remained for one year. In January 1969, he was assigned to Fort Dix, New Jersey, where he lived on the military reservation until October 1970. During his assignment at Fort Dix he stayed at his mother-in-law's home over several weekends while his wife was staying there. In October 1970, he was assigned to Korea where he was stationed at the time of his divorce trial in May 1971.

The appellee testified that the reason he had stayed at his mother-in-law's home during weekends while he was at Fort Holabird and Fort Dix was to be close to his children and because of a sense of duty to his critically-injured wife but without any intent on his part to continue the marriage. He further testified that he and his wife had seriously disagreed immediately prior to his decision to go to Vietnam in July 1965 and that he had informed her at that time that he was not going to live with her when he returned and was going to get a divorce. He stated that he had never changed his intention to separate and live apart from his wife since he made the decision to do so in July 1965. The appellee's father Isaac Jackson testified that he knew the appellee had separated from his wife; however, he did not say how long they had been separated. The appellee's brother Robert Jackson testified that he also knew the parties were separated; however, he likewise did not state when the separation had started.

The wife testified that the first time her husband had mentioned divorce or separation to her was in October 1970, immediately prior to his departure for Korea. She further stated that if the accident had not occurred, she

would have been living with her husband in Korea. Her mother testified that she had heard the husband mention divorce and separation to his wife in October 1970 which was the first time she had ever heard the subject mentioned by either party.

## INTERPRETATION OF THE STATUTE

*Md. Code* Art. 16 § 24 sets forth the grounds for a divorce a vinculo. This statute was amended by Chapter 656 of the Acts of 1969 so as to provide a seventh ground. The amendment sets forth that a divorce may be granted "on application of either party when the husband and wife have lived separate and apart without any cohabitation and without interruption for five years." We hold that it is clear from the wording of this seventh ground that it is composed of the following elements: 1) that the parties shall have lived separate and apart for five years preceding the filing of the divorce suit, 2) that there has been no cohabitation between them during the period of separation, and 3) that the separation was without interruption. The bill of complaint alleges that all of these elements existed prior to the filing of the bill on December 31, 1970.

The key element concerned in this appeal is the requirement that the parties *"lived separate and apart"* for five years prior to the institution of the suit. The interpretation of the legislative intent in the use of the phrase "lived separate and apart" in the seventh ground is a matter of first impression in this State so far as this Court is aware. The fifth ground for divorce under Art. 16 § 24 provides in substance that the parties shall be entitled to a divorce when the husband and wife shall have voluntarily lived separate and apart for eighteen months. The Court of Appeals interpreted the legislative intent in the use of this phrase in the fifth ground in *Lillis v. Lillis*, 235 Md. 490, 494-496, (1964). In that case the Court held the phrase was intended to include only those situations where the husband and wife had not lived under the same roof for the prescribed period

of eighteen months and that mere cessation of sexual relations between the parties was not sufficient to constitute living "separate and apart." In so holding, the Court said at pages 494-496:

"Our research indicates that virtually all the jurisdictions in this country which have voluntary separation provisions similar to ours, and which have had occasion to interpret them, have denied divorces where the parties have lived in the same house during part or all of the critical period, even though discontinuance of sexual relations was proved. The rule generally followed in those jurisdictions is stated in 17 Am. Jur. *Divorce,* sec. 185, as follows:

'Where the statute defines the ground for divorce as a 'living separate and apart' for a certain period, the fact that while the parties have become estranged they continue to live under the same roof precludes a finding that they have lived separate and apart. The discontinuance of sexual relations is not in itself a living 'separate and apart' within the meaning of some statutes, and a divorce will be denied where it appears that during the period relied upon the parties had lived in the same house. It has been said that what the law makes a ground for divorce is the living separately and apart of the husband and wife continuously for a certain number of years. This separation implies something more than a discontinuance of sexual relations * * *. It implies the living apart for such period, in such a manner that those in the neighborhood may see that the husband and wife are not living together * * *.'

"The text writers also agree that the parties cannot live under the same roof and sue for divorce on the ground that they have been liv-

ing 'separate and apart', even though they do not engage in sexual relations. * * * Keezer, *Marriage and Divorce* (3rd ed., 1946), sec. 455, p. 507. * * * 1 Nelson, *Divorce and Annulment* (2nd ed., 1945), sec. 4.46 pp. 152-154.

* * *

"In view of the overwhelming weight of authority, we are constrained to hold that since the parties to the instant suit intermittently lived in the same house during the eighteen months prior to the institution of suit, they were not living 'separate and apart, without cohabitation', within the meaning of Art. 16, sec. 24. * * *"

The Legislature enacted the seventh ground in 1969 (Chapter 656) subsequent to the Court's interpretation of the phrase "separate and apart" in 1964. In *Shriner v. Mullhausen,* 210 Md. 104, 114-115 the Court of Appeals held that where a statute providing for the right-of-way at road intersections contained wording substantially identical to a similar statute previously enacted and previously interpreted by the Court of Appeals, it would be presumed that the Legislature intended that the words used in the later statute were to have the same meaning given them by the Court's prior interpretation of the earlier statute. In so holding, the Court said in *Shriner, supra,* at page 114-115:

"The wording in Sections 198 and 207, *supra,* the boulevard statutes, are practically identical with the wording in Section 199, *supra.* The many decisions of this Court construing the boulevard statute have become a part of that statute and will continue to be so until changed by the Legislature. * * * Section 199, *supra,* was adopted by the Legislature by Chapter 1007, Section 179, of the Acts of 1943, * * * The Legislature, when it passed that Act, must have known how this Court construed the

boulevard statute in 1939 in *Greenfeld v. Hook,* 177 Md. 116, * * *. As frequently pointed out by this Court, where the Legislature has acquiesced in the judicial construction of a statute, there is a strong presumption that the intention of the Legislature and the words used by it have been correctly interpreted, * * *. Therefore, we must give the same interpretation to Section 199, *supra,* as has been given by this Court to Sections 198 and 207, *supra,* the boulevard statutes."

In *Zeamer v. Reeves,* 225 Md. 526 at 531 and in *Privett v. Hauswald Bakery,* 258 Md. 218, 222, the Court approved the holding and reasoning in *Shriner.* In view of the interpretation of the phrase "lived separate and apart" in *Lillis* and the holdings in *Shriner, supra,* we hold that the legislative intent in employing the phrase in the enactment of the seventh ground in 1969 was that it should have the same meaning as that previously given it by the Court's decision in the *Lillis* case in 1964 which interpreted the identical words in the fifth ground.

The interpretation given the phrase in *Lillis* was based on the principle that for a husband and wife to come within the meaning of the phrase as intended by the Legislature, they should live apart "in such a manner that those in the neighborhood may see that the husband and wife are not living together." Under this rationale the fact that the husband and wife had lived together in the mother-in-law's home rather than in their own independent home during the critical period would not interfere with the application of this principle in the instant case.

We hold as a matter of law that the phrase "lived separate and apart" included in the seventh ground of Art. 16 § 24 requires that the parties live in completely separate places of abode during an entire five-year period prior to the institution of the suit. The provisions of the seventh ground further expressly require as ad-

ditional elements that there be no cohabitation between the parties during the five-year period and that both the separation and the absence of cohabitation continue without interruption for the five-year period. We therefore hold that the Chancellor was in error in ruling that the appellee could establish his right to a divorce on the seventh ground by merely showing there had been no sexual relations between him and his wife during the critical five-year period, notwithstanding the fact that the appellee admitted he had lived in the same house with his wife on numerous occasions during that time. That part of the decree which granted the husband a divorce a vinculo on the seventh ground of Art. 16 § 24 will therefore be reversed.

## ALIMONY, CHILD CUSTODY, AND SUPPORT

It is well settled in this State that an equity court can only award alimony to the wife where the allegations and proof are sufficient to entitle her to a divorce a vinculo or a mensa et thoro. See *Winkel v. Winkel,* 176 Md. 167, 169-170; *Hood v. Hood,* 138 Md. 355, 361; *Md. Code* Art. 16 §§ 2 and 3. Since the allegations and proof here were insufficient to entitle the appellant to a divorce under the seventh ground set forth in Art. 16 § 24, that part of the decree which awarded her alimony must also be reversed. However, we point out that this ruling does not prohibit the appellant from instituting a separate action against the appellee in the future for her support on other grounds sufficient to entitle her to a divorce. If such grounds are properly alleged in the pleadings and established by the proof, they would entitle her to alimony whether or not a divorce was sought or granted. This Court held in *Myers v. Butler,* 10 Md. App. 315, 316 that the custody of minor children is a particular concern of courts of equity under their inherent jurisdiction as declared in Art. 16 §§ 66 and 25, and may be exercised whether a divorce is decreed or denied. In *Seltzer v. Seltzer,* 251 Md. 44, the Court held the father has a continuing common-law obligation to support his

734

children. We hold therefore that in awarding the custody of the infant children of the parties to the mother and providing for their support by the father, the court was acting within its jurisdiction notwithstanding the fact that this Court has now invalidated that part of the decree which granted a divorce. It is well settled that reasonable counsel fees are allowable to the wife as a privileged suitor in a divorce suit so as to permit her to be adequately represented, irrespective of the merits of her case. *Gosnell v. Gosnell,* 208 Md. 179; *Smith v. Smith,* 216 Md. 141.

There is no contention by either party that the award of custody and support for the children or the allowance of counsel fees were in error on the merits. These parts of the decree will therefore not be disturbed.

> *Decree reversed in part and affirmed in part in accordance with this opinion.*
> *Appellee to pay the costs.*