In re the **MARRIAGE OF Agnes S. UHLS, Petitioner-Appellant,**

and

**John Harlan Uhls, Respondent.**

**No. 37393.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Feb. 15, 1977.

Motion for Rehearing or Transfer
Denied March 15, 1977.

Application to Transfer Denied
May 10, 1977.

Kappel, Neill, Staed & Wolff, C. William Portell, Jr., St. Louis, for petitioner-appellant.

Flynn & Parker, Francis C. Flynn, Mark M. Wenner, St. Louis, for respondent.

WEIER, Judge.

This appeal brings up for review the judgment in the circuit court denying the petition of Agnes S. Uhls for dissolution of marriage. In answer to her petition, respondent-husband, John Harlan Uhls, denied that the marriage was irretrievably broken and did not seek any affirmative relief.

The marriage of the parties occurred May 30, 1953. Five children were born of this marriage. The eldest child, a girl, was twenty-one years of age at the time the case was heard in April of 1975. A good student, she attended the University of Missouri on a scholarship funded by her father's employer. The remaining four children are boys: Christopher, born September 8, 1955; Gregory, born July 25, 1957; Gerard, born March 10, 1959; and Matthew, born August 19, 1961. Mr. Uhls was employed by McDonnell-Douglas Corporation. Mrs. Uhls was not employed outside the home until October 19, 1972, when she began working as a licensed practical nurse after obtaining an appropriate education. It appears from the testimony that there was a gradual deterioration of the relationship of the parties after the early years of the marriage. There can be no dispute, however, that beginning about July, 1970, there was a complete absence of communication, mutual respect and love, tolerance of the acts and opinions of the other, kind solicitude, aid and comfort in time of need and all of the many other elements which are generally considered to be necessary for a happy marriage between a man and a woman.

■ Where, as here, one of the parties has denied under oath or affirmation that the marriage is irretrievably broken, the court is required to consider all relevant factors including the circumstances that gave rise to the filing of the petition and the prospect of reconciliation; and after hearing the evidence, in order for the court to find that the marriage is irretrievably broken, the petitioner must satisfy the court of one or more of the facts or conditions set forth in § 452.320, RSMo. 1969, Cumulative Supplement, 1975 as follows:

(a) That the respondent has committed adultery and the petitioner finds it intolerable to live with the respondent;

(b) That the respondent has behaved in such a way that the petitioner cannot reasonably be expected to live with the respondent;

(c) That the respondent has abandoned the petitioner for a continuous period of at least six months preceding the presentation of the petition;

(d) That the parties to the marriage have lived separate and apart by mutual consent for a continuous period of twelve months immediately preceding the filing of the petition;

(e) That the parties to the marriage have lived separate and apart for a continuous period of at least twenty-four months preceding the filing of the petition; . .

No allegation of the pleadings or any of the evidence submitted to the court indicated that the respondent had committed adultery, and the court so found.

In regard to respondent's behavior (Subsection (b)) the court determined that the evidence failed to show physical mistreatment which could rise to the level of abuse of respondent's wife or children. The court remarked that respondent's strict religious ideas and frugal mode of living increasingly offended his wife who then took extreme positions toward the handling of family finances, not eating meals with respondent, refusing to sleep with respondent or go on vacations with him or even to accept presents from him. The court concluded that although respondent's behavior was so offensive to the petitioner that she did not wish to live with respondent or even talk with him, it was not clear that his behavior was in fact that offensive.

■ We have read the transcript and have concluded that the testimony of the parties with respect to behavior under Subsection (b) of the statute is contradictory on virtually every topic, with each party seeking to portray himself or herself as blameless. Due regard is given to the opportunity of the trial court to have judged the credibility of the witnesses and we affirm the court in its findings on this determination. Rule 73.01(3)(b); *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo.banc 1976); *Murphy v. Murphy*, 536 S.W.2d 951, 953[3] (Mo. App. 1976).

In respect to abandonment (§ 452.-320.2(1)(c)), the trial court pointed out that the strongest evidence of abandonment was that respondent had installed a lock on his door to the bedroom in which he lived but the evidence clearly indicated that petitioner voluntarily left the marital bedroom in July of 1970 and never sought to return. Respondent did not place a lock on his door until some two years after petitioner quit the bed of the parties. Both of them ceased sexual intercourse by a separation instituted by the petitioner and consented to by her. Furthermore, respondent continued to maintain the family and provide at least the essentials necessary for their sustenance. Abandonment may be established by cessation of cohabitation without good cause with intent on the part of the deserter not to resume living with the other party together with an absence of consent to the separation on the part of the alleged abandoned party. Constructive abandonment may be established by proof of indignities rendered to the other party so as to justify him or her in refusing to live with the other. *Thomason v. Thomason*, 262 S.W.2d 349, 351[2] (Mo.App. 1953). The finding of the court that abandonment did not exist here is supported by the evidence that petitioner sought the separation that existed between the parties.[1]

The fourth and fifth basis upon which the petitioner must satisfy the court before a marriage may be found to be irretrievably broken is that of living separate and apart. Under § 452.320.2(1)(d), parties to the marriage must have lived separate and apart by mutual consent for a continuous period of at least twelve months immediately before the filing of the petition. Subsection (e) requires that the parties must have lived separate and apart for a continuous period of at least twenty-four months preceding the filing of the petition but does not require mutual consent. Here the court determined that although the parties no longer live together as man and wife, the fact that they occupied the same home and performed a number of normal marital duties ruled out any finding that they were "living separate and apart." Although a finding that the parties lived separate and apart by reason of constructive mutual consent might be sustained upon appeal if that determination had been made, the determination was not made and we disregard this ground to pass on to the final basis for finding the marriage to be irretrievably broken. Here the court determined that the parties had not lived separate and apart for a continuous period of at least twenty-four months preceding the filing of the petition because they were occupying the same home and performing a number of normal marital duties.

As pointed out by the court, the petition did not allege living separate and apart as a ground for the breakdown of the marriage and a decree of dissolution. There can be no doubt, however, that the issue with regard to living separate and apart was tried by petitioner with the consent of the respondent and the court rightfully considered this ground when it made its final determination. Under our procedure, issues not raised in the pleadings may be tried by consent of the parties and where so tried, they are treated as if they had been pleaded. Amendment of the pleadings, even though not formally requested, is presumed and will not affect the trial of the issues. Rule 55.33; *Murphy v. Murphy, supra* at 952[2].

Former divorce laws of this State did not contain a ground for divorce based upon "living separate and apart" for a specified time. (*See* § 452.010, RSMo. 1969, now repealed.) The only separation recognized as a cause for a divorce was desertion. As could be expected, no cases interpreting the phrase "living separate and apart" existed under the former divorce laws which could aid in the interpretation of the meaning of this clause in the sections heretofore re-

---

1. It should be noted that previous existing defenses have been abolished (§ 452.310.5, RSMo. 1969, 1975 Supp.). This includes condonation and we do not advance the theory of consent as a defense to the grounds of abandonment but merely to indicate that here there was no abandonment because petitioner initiated and maintained the separation from connubial relations.

ferred to. The phrase, however, has been interpreted by our courts in a slightly different context. On the question of whether suit money was properly awarded after the plaintiff had filed her petition for divorce, the court in *Lipp v. Lipp*, 117 S.W.2d 364, 365–66[1, 3] (Mo.App. 1938), stated that a husband and wife were living separate and apart "notwithstanding they were sheltered by the same roof." An award of suit money by the trial court was affirmed. Subsequently, in *Downing v. Downing*, 279 S.W.2d 538, 540 (Mo.App. 1955), the court cited *Lipp* with approval on the same issue. There the plaintiff proved sufficient facts to make a prima facie case on the merits of a divorce proceeding to entitle her to temporary allowance and suit money even though she admitted that she and her husband resided in the same house. Our court, in *O'Brien v. O'Brien*, 485 S.W.2d 674, 676[1] (Mo.App. 1972), agreed with *Lipp* and *Downing* and denied a contention that the award of alimony pendente lite in favor of the wife was in error because plaintiff lived with the defendant in their residence at the time of the hearing of the motion. Our court also adopted the same doctrine in a suit for divorce under the former law where condonation was advanced as a defense in a divorce action where the grounds alleged and proven were general indignities. There in *Pobst v. Pobst*, 317 S.W.2d 655, 660[2] (Mo.App. 1958), defendant contended that the plaintiff had condoned these acts constituting the general indignities by living with defendant for approximately a month after the petition was filed. The court stated at page 660: "It is true that the parties lived in the same house and slept in the same bed during that time, but when all the evidence is examined it becomes apparent that there was no cohabitation in the true sense of the word. During that period these parties had no marital relations. They did not speak to each other, and would not eat at the same table. . . . While it is true that, under the law, there is a strong presumption of condonation where the parties occupy the same room and bed, this presumption may be rebutted."

It is apparent that in other jurisdictions where "living separate and apart" is a ground for divorce or dissolution of marriage, the weight of authority supports the general rule expounded in *Lillis v. Lillis*, 235 Md. 490, 201 A.2d 794, 796 (1964), quoting 17 Am.Jur. Divorce, § 185, to the effect: "Where the statute defines the grounds for divorce as a 'living separate and apart' for a certain period, the fact that while the parties have become estranged they continue to live under the same roof precludes a finding that they have lived separate and apart." [2] We are bound, however, by the construction of the term "living separate and apart" established by our courts in *Lipp* and followed in *Downing* and *O'Brien*. Furthermore, we conclude that this interpretation of the term is a more reasonable one than that adopted in the majority of jurisdictions which precludes a finding of "living separate and apart" when parties who have become estranged continue to live under the same roof. As stated by the court in *Pedersen v. Pedersen*, 71 App.D.C. 26, 107 F.2d 227, 232 (1939): "Men and women may live as strangers, even as enemies, more separately, more contentiously, more violently, under a single roof than under two. Continued occupancy of the same house may be evidentiary either of harmonious or at least not disputed matrimonial relations or of compelling necessity on the part of one or both of the parties. Generally, and in the absence of contrary showing, it will support the former view. But it does not create a conclusive presumption of law to that effect. It is merely one fact, to be considered with others, in determining the character of the association and relations of the man and the woman. Its normal inferential value can be overcome by evidence showing that they live not as man and wife." We adopted essentially this same doctrine in *Pobst v. Pobst, supra*. Again in *Heckman v. Heckman*, 245 A.2d

---

2. In addition to the authorities found in support of this doctrine in *Lillis, supra, see also Oxford v. Oxford*, 237 Ark. 384, 373 S.W.2d 707, 708 (1963); *DeRienzo v. DeRienzo*, 119 N.J. Super. 192, 290 A.2d 742 (1972).

550, 551[1–3] (Del.Sup.Ct. 1969), where the court has adopted the doctrine that parties may live separate and apart, though sleeping under the same roof when all other incidents of marriage have been forsaken, reasons advanced which compel parties to remain in the same residence are: economic necessity, stubbornness, jockeying for position as to possession of house and contents. Our interpretation of the phrase "living separate and apart" as it appears in § 452.-320.2(1)(d)(e), RSMo. 1969, 1975 Supp., does not necessarily mean separate roofs but rather means separate lives. The fact that a husband and wife continue residence in the same abode may be evidence that they continue to live together as man and wife but it does not create a conclusive presumption to that effect. Other evidence may cause the court to come to the conclusion that even though a married couple remain in one place of abode, they are in fact "living separate and apart."

■ It is apparent to us that under the facts of this case, petitioner and respondent have been living separate and apart for over two years prior to the time that the amended petition was filed March 25, 1974. The evidence is uncontradicted that sexual relations ceased in July of 1970. Petitioner and respondent did not occupy the same room after that time. Respondent locked his bedroom about two years after the separation and it has remained locked when he is absent from the house since that time. For several years, respondent has left the home for his annual vacation of four weeks and does not tell petitioner where he is going or where he might be reached in an emergency, relying on her knowledge that she might obtain such information from his relatives. Respondent generally has not associated with his family. He has occasionally administered disciplinary action to the children but there is no communication between respondent and his wife with regard to such disciplinary or other problems involving the children. Respondent has provided certain staple foods which he brings and leaves in the kitchen without communication with petitioner. Other food items he retains in his locked bedroom and rations them in such amounts and at such times as he deems suitable. He does not eat meals with petitioner or the rest of the family even though petitioner has generally continued to cook the meals which she and the rest of the family eat. He cleans his own bedroom and the living room where he normally sits by himself to watch television. His wife cleans the rest of the house except the boys' rooms which are usually cleaned by them. Respondent does his own laundry in a washing machine which he purchased and which is not used by petitioner. Respondent and the other members of the family attend church separately. All conversation or other communication is avoided.

Under the state of facts as they exist here, we have concluded that petitioner and respondent have been living separate and apart for over two years immediately prior to the filing of the petition, that there remains no reasonable likelihood that the marriage can be preserved, that the marriage is irretrievably broken, and that petitioner is entitled to a decree of dissolution of her marriage with the respondent. The judgment below denying dissolution is therefore reversed and the marriage of Agnes S. Uhls and John Harlan Uhls is dissolved. Because it will soon be two years since the testimony was taken with regard to the needs of the parties on the question of maintenance and evidence at that time indicated that the two older boys were in a position where they were either emancipated or could soon be so, the case is remanded to the circuit court with instructions to review the evidence in light of the decree of dissolution and upon the hearing of such additional testimony which may be presented by the parties, prepare and issue its decree awarding the care and custody of the minor children, provide for the support of the minor unemancipated children, consider maintenance, if any, award marital property to the respective parties, and consider provisions for attorney's fees, if any.

CLEMENS, P. J., and DOWD, J., concur.