## Meyerl v. Meyerl

*Samuel R. Sciullo,* for plaintiff.
*Thomas Junker,* for defendant.

WETTICK, *J.,* July 6, 1981 — Plaintiff instituted this divorce action under section 201(d)(1) of the Divorce Code of April 2, 1980 P.L. 63, 23 P.S. §201. In his complaint, he alleged that he and his wife have lived separate and apart for a period of at least three years and that their marriage is irretrievably broken. Defendant filed an answer in which she did not deny that the marriage is irretrievably broken but contended that the parties have not lived sepa-

rate and apart for a period of three years because both parties resided at the marital residence from December 1979 until June 1980.

A hearing was conducted before this court to determine whether the parties have lived separate and apart for three years within the meaning of section 201(d)(1) of the Divorce Code. Both parties testified; their testimony presented the same factual picture.

The parties were married on March 13, 1953. Plaintiff built a four bedroom single-family house in Evans City, Pa., which the parties and their children occupied from 1958 to 1972, at which time plaintiff left the house. Plaintiff moved back into the house for a short period in January 1974 and left again. He did not live in this house again until he returned in late December 1979 at which time he remained until the end of June 1980. Plaintiff returned to this house because he was out of work and could not afford to live elsewhere. Plaintiff moved into the house without advising his wife beforehand; she neither invited him nor welcomed him.

Throughout this six months' period, plaintiff lived in the basement while his wife and the children living at home occupied the first and second floors of the house. During his entire stay at this house, he talked to his wife on only one occasion. This conversation occurred in the basement on the day in which he moved back into the house; in this conversation his wife strenuously objected to his returning to the house, and the conversation did not last for more than one minute. His wife was never again in the basement and plaintiff was never upstairs except for an occasional instance when he entered the kitchen to take to the basement a meal that a child had apparently put out for

him. Plaintiff lived in the portion of the basement which is a gameroom. In the basement, there is a sink, shower and toilet. He entered and exited the basement either through a separate door to the basement or through a garage door that led to both the basement and the first floor. He slept in a bed which he brought with him when he moved into the house and cooked on a hot plate located in the basement. He never visited, slept, or used any facilities in the first and second floors of the house. During defendant's six months' stay at the house, his wife never cooked meals or performed any other tasks for him and he did nothing for her. Also, defendant never invited plaintiff to participate in any activities with her or other members of the family and he participated in no such activities. In fact, his daughter was married during the period in which he was residing in the house and he was not informed of or invited to and did not attend this wedding.

The grounds for divorce are set forth in Section 201 of the Divorce Code. The only ground that may be applicable is that set forth in section 201(d) which permits a court to grant a divorce if the court determines "that the parties have lived separate and apart for a period of at least three years and that the marriage is irretrievably broken." Because defendant does not dispute plaintiff's allegation that the marriage is irretrievably broken, the issue presented in this case is whether plaintiff may be deemed to have lived separate and apart from defendant for at least three years when he has lived within the last three years in a separate portion of the house in which defendant also resided.

The term "separate and apart" is defined in section 104 of the Divorce Code as a "[c]omplete cessation of any and all cohabitation." The term "cohabi-

tation" does not have a fixed meaning.[1] According to Black's Law Dictionary (4th Ed. 1968), the term may mean "Dwelling together," "Intercourse together as husband and wife," or "Living, or abiding or residing together as man and wife." Also compare Totino v. Totino, 176 Pa. Superior Ct. 108, 106 A. 2d 881 (1954), where the court for purposes of defining desertion as a ground for divorce stated, at p. 113: "Cohabitation is living or dwelling together. It means having the same habitation, so that in the

---

1. Representative McVerry, who sponsored the amendment which included the definition of separate and apart as the complete cessation of any and all cohabitation, stated that he proposed this amendment so that "[W]e cannot have a circumstance where two people occupy the same dwelling but consider themselves to be living separate and apart because they are not engaging in family affairs or marital relations, shall we say." Legislative Journal — House, October 10, 1979, p. 1962.

This statement, however, cannot be considered in ascertaining the legislative intent because it cannot be assumed that the understanding of an individual legislator as to the meaning of language in proposed legislation accurately reflects the understanding of other legislators who supported this legislation. Hoffman v. Pennsylvania Crime Victim's Compensation Board, 46 Pa. Commonwealth Ct. 54, fn. 2, 405 A. 2d 1110 fn. 2 (1979).

Moreover, even if there had been more debate on this issue so that there would be a better indication of the understanding of the various legislators as to the meaning of "complete cessation of cohabitation," in construing this legislation we would still be precluded from looking to these statements of individual legislators as to their understanding of the meaning of this language because of the established line of cases within this Commonwealth which provide that what is said on the floor of the House or the Senate should not be relied upon in formulating legislative intent: Com. v. Alcoa Properties, Inc., 440 Pa. 42, 269 A. 2d 748 (1970); Philadelphia v. Depuy, 431 Pa. 276, 244 A. 2d 741 (1968); Martin Estate, 365 Pa. 280, 74 A. 2d 120 (1950).

words of Chief Justice Agnew, 'where one lives and dwells, there does the other live and dwell always with him': Yardley's Estate, 75 Pa. 207." And also stated in Com. ex rel. Dittman v. Dittman, 174 Pa. Superior Ct. 599, 101 A. 2d 145 (1953), where the court ruled that parties who after entering into a marriage spent only one night together as a consummation of their marriage cohabited for purposes of legislation legitimizing a child where the child's mother and father "enter into the bonds of lawful wedlock and cohabit."

For the reasons set forth later, we hold that under certain circumstances the requirement of a "complete cessation of any and all cohabitation" should be construed to permit a finding that persons have lived "separate and apart" within the meaning of section 201(d) during a period in which they resided in the same dwelling. In reaching this decision, we recognize that the substantial majority of cases from other jurisdictions contain language that parties are not living separate and apart so long as they live in the same house even though they no longer engage in sexual intercourse or otherwise act as husband and wife. The case law is accurately summarized in DeRienzo v. DeRienzo, 119 N.J. Superior Ct. 1945, 192, 290 A. 2d 742, 743-744 (1972), where the New Jersey Superior Court held that parties who had lived for the past seven years in the same house with plaintiff's bedroom having locks on both sides of the door and he alone having the key had not resided in "different habitations":

"See Lillis v. Lillis, 235 Md. 490, 201 A. 2d 794 (Ct. App. 1964) (separate rooms in the same residence occupied intermittently by both is not living separate and apart); Brimson v. Brimson, 227 Ark.

1045, 304 S.W. 2d 935 (Sup. Ct. 1957) (where the spouses, owners of a drug store, lived separately in up and downstair apartments and where the husband had a key to the wife's apartment in which was the only bathroom, the parties were not living separate and apart); Rogers v. Rogers, 258 Ala. 477, 63 So. 2d 807 (Sup. Ct. 1953) (living separate and apart means a complete cessation of all marital duties and relations between husband and wife and their living separate and apart in such a manner that those in the neighborhood may see that they are not living together); Neff v. Neff, 30 Wash. 2d 593, 192 P. 2d 344 (Sup. Ct. 1948) (continued occupation of the same residence barred divorce on the ground of separation); McNary v. McNary, 8 Wash. 2d 250, 111 P. 2d 760 (Sup. Ct. 1941) (living separate and apart means in separate residences); Dudley v. Dudley, 225 N.C. 83, 33 S.E. 2d 489 (Sup. Ct. 1945) (when husband and wife live in the same house and thus hold themselves out to the community as man and wife there is no separation); Young v. Young, 225 N.C. 340, 34 S.E. 2d 154 (Sup. Ct. 1945) (separation means living apart for the entire period in such a manner that those who come in contact with the spouses may see that they are not living together); McDaniel v. McDaniel, 292 Ky. 56, 165 S.W. 2d 966 (Sup. Ct. 1942) (living apart means in separate abodes); Stewart v. Stewart, 45 R.I. 375, 122 A. 778 (Sup. Ct. 1923) (living in separate apartments in the same apartment house, even though owned by the husband, constituted living separate and apart). See also, Christiansen v. Christiansen, 68 R.I. 438, 28 A. 2d 745 (Sup. Ct. 1942); Hava v. Chavigny, 147 La. 330, 84 So. 892 (Sup. Ct. 1920) (living separate and apart must be known in the community of residence, and the evi-

dence thereof is not to be sought merely from behind the closed doors of the matrimonial domicile).

The rationale for holding that parties living in the same dwelling may not be deemed to be living separate and apart for purposes of the requisite separation period is that separation requires living apart in such a manner that those in the community may see that the parties are not living together as husband and wife. A typical illustration of this rationale is the following quote from Matter of Estate of Adamee, 291 N.C. 386, 391, 230 S.E. 2d 541 (1976):

"Separation as grounds for a divorce 'implies living apart for the entire period in such manner that those who come in contact with them may see that the husband and wife are not living together. . . . Separation means cessation of cohabitation, and cohabitation means living together as man and wife, though not necessarily implying sexual relations. Cohabitation includes other marital responsibilities and duties' (Citation omitted.)

"In Dudley v. Dudley, 225 N.C. 83, 863, 33 S.E. 2d 489, 491 (1945), Justice Denny (later Chief Justice), said '. . . This separation implies something more than a discontinuance of sexual relations, whether the discontinuance is occasioned by the refusal of the wife to continue them or not. It implies the living apart for such period in such manner that those in the neighborhood may see that the husband and wife are not living together.' (Citations omitted.)

"'Marriage is not a private affair, involving the contracting parties alone. Society has an interest in the marital status of its members, and when a husband and wife live in the same house and hold

themselves out to the world as man and wife, a divorce will not be granted on the ground of separation when the only evidence of such separation must, in the language of the Supreme Court of Louisiana (in the case of Hava v. Chavigny, 147 La. 330, 331, 84 So. 892) "be sought behind the closed doors of the marital domicile." Our statute contemplates living separate and apart from each other, the complete cessation of cohabitation.'"

These cases upon which defendant relies are distinguishable even if they would be followed by the Pennsylvania courts because they involve fact situations in which the parties living under the same roof appeared to the world to be living as husband and wife with the only evidence of separation being obtainable from "behind the closed doors of the marital domicile." In contrast, the evidence of separation in the present case is apparent to third parties because there was a long separation period and plaintiff's return to the basement portion of the house which is self-contained with a separate entrance would not indicate to third parties that there had been a resumption of a husband and wife relationship. To find cohabitation where the parties are living entirely separate lives in separate living units merely because the units are under the same roof would stretch the term "cohabitation" beyond any recognized meaning, and there is no basis for construing our Divorce Code in this strained fashion.

Also we question whether Pennsylvania will follow the case law upon which defendant relies because there are substantial reasons for giving the term "cohabitation" a narrower meaning than that used in the majority of other states. The term "cohabitation" must be construed to effect the ob-

jectives of the legislation: Com. ex rel. Dittman v. Dittman, supra; section 102 of the Divorce Code. These objectives, enumerated in section 102 of the Divorce Code, provide, inter alia, that it is the policy of the Commonwealth to "[m]ake the law for legal dissolution of marriage effective for dealing with the realities of matrimonial experience." To effect this objective, we should not construe this legislation to give legal recognition to a marriage which all relevant evidence shows to have been dead for at least three years.

Moreover, in most jurisdictions a spouse is entitled to a divorce solely by showing that the parties have been living separate and apart for the statutory period. Consequently, there is a justification for these jurisdictions to construe broadly the term "cohabitation" in order to protect marriages that may be viable. In Pennsylvania, on the other hand, a broad construction of "cohabitation" is unnecessary to protect marriages that may be viable because such marriages are protected by section 201(d)(1)'s additional requirement for obtaining a divorce that the marriage be irretrievably broken coupled with the power given the court in section 201(d)(2) to compel counseling.

Because our Divorce Code establishes as the policy of the Commonwealth that the lawful legal dissolution of marriage be effective for dealing with the realities of matrimonial experience, our courts will be influenced by the minority position which has refused to apply a rigid requirement of separate residences in considering whether parties are living separate and apart. The leading cases enunciating this position are Heckman v. Heckman, 245 A. 2d 550 (Del. Sup. Ct. 1968), and In re Marriage of Uhls, 549 S.W. 2d 107 (Mo. Ct. of App., 1977). The Heckman case involved legislation which es-

tablished as grounds for divorce that the parties live separate and apart without any cohabitation for three years. The trial court found that although all incidents of the marriage had been abandoned by mutual consent for more than three years, the parties were not entitled to a divorce because they continued to live in the same single-family dwelling house until shortly before the institution of the divorce action. The Delaware Supreme Court reversed, holding that a couple may live separate and apart under the same roof, at 551-2:

"It must be recognized that various reasons impel spouses to remain in the same dwelling after all marriage relations have ended between them; examples are economic necessity, stubbornness, or jockeying for position as to the possession of the house and contents. The continued joint residence may make it difficult to prove to a Judge's satisfaction the fact of desertion or voluntary separation, as the case may be, because of the natural inference that a married couple living in the same house are presumably exercising some of the usual incidents of cohabitation between married persons. But difficulty of proof is not synonymous with impossibility of proof. In the present case, the trial Judge found that the severance of marital relations was *complete*, with no reasonable expectation that they would be resumed; we have no reason to disagree with the finding. We do, however, disagree with the holding that our statute forbids the entry of a decree simply because both spouses continue to live under the same roof." (Emphasis in original.)

In the case of In re Marriage of Uhls, the court considered legislation which required that the parties to the marriage live separate and apart for a continuous period of at least 24 months preceding

the filing of the petition. The lower court held that although the parties no longer lived together as husband and wife, their occupying the same home precluded a finding of living separate and apart. The appellate court reversed, holding that the fact that a husband and wife continue to reside in the same abode does not create a conclusive presumption that they continue to live together as husband and wife, and stated at 111:

"Furthermore, we conclude that this interpretation of the term is a more reasonable one than that adopted in the majority of jurisdictions which precludes a finding of 'living separate and apart' when parties who have become estranged continue to live under the same roof. As stated by the court in Pedersen v. Pedersen, 71 App. D.C. 26, 107 F. 2d 227, 232 (1939): 'Men and women may live as strangers, even as enemies, more separately, more contentiously, more violently, under a single roof than under two. Continued occupancy of the same house may be evidentiary either of harmonious or at least not disputed matrimonial relations or of compelling necessity on the part of one or both of the parties. Generally, and in the absence of contrary showing, it will support the former view. But it does not create a conclusive presumption of law to that effect. It is merely one fact, to be considered with others, in determining the character of the association and relations of the man and woman. Its normal inferential value can be overcome by evidence showing that they live not as man and wife.' . . . Our interpretation of the phrase 'living separate and apart' . . . does not necessarily mean separate roofs but rather separate lives. The fact that a husband and wife continue residence in the same abode may be evidence that they continue to

live together as man and wife but it does not create a conclusive presumption to that effect. Other evidence may cause the court to come to the conclusion that even though a married couple remain in one place of abode, they are in fact 'living separate and apart."

Policy reasons for construing the Divorce Code in this manner were also recognized in the Legislature debate on the Divorce Act of 1980 by the supporters of unilateral no-fault divorce:[2]

"We have heard the arguments about the Roman Empire, the arguments about the legal contract aspects, the arguments about the religious aspects, when I think the real argument is love. It is something that has not been mentioned in this argument of 2 days. When love flourishes, marriage results. When it diminshes, one of the partners should be able to end the relationship. Marriage was not meant to be a form of mental anguish or torture, and that is what has resulted in our present antiquated divorce law.

"I will leave you with a few words of wisdom: Love usually results in marriage, whether you are rich or whether you are poor, but when love goes out the window, one should be allowed to go out the door. Thank you."

Statement of Representative Gamble, Legislative Journal — House, October 10, 1979, p. 1853.

"When we talk about the family unit and the importance of keeping it together, I submit to you that

---

2. We cite the legislative debate solely for purposes of showing that such policy considerations were recognized by various legislators and may therefore be considered in construing the Divorce Act. For the reasons set forth in the previous footnote, these statements made in the legislative debate shall not be used to support a reading of an ambiguous portion of the Divorce Code in a particular fashion.

I do not think it is a very healthy family unit when the parents cannot and do not get along, and the children grow up in that environment where their parents do no speak to each other, or, if they do, it is through the kids, tell your father to do this or tell your mother to do that, and if that one spouse who does not want the divorce says, I do not care what you do or what happens, I am simply not going to give you a divorce, and there are children involved, it seems to me that this Commonwealth ought to take recognition of that fact. That is not necessarily a healthy environment for children. How much better would it be if that spouse could get a divorce, find another mate, raise those children in a home environment with some love and caring and communication, rather than to make that family stay together as a unit because we say that that is the best thing for this Commonwealth. I do not think it is."

Statement of Representative Ritter, Legislative Journal — House, October 10, 1979, p. 1851.

"The ball game is over but there is settled hatred. There is no more family unit, and as long as the father and the mother do not get along, there will never be family picnics. There will never be the family outings. There will never be fun vacations. I think it is much better to have a warm relationship develop between the mother and the child or the father and the child on an individual basis than to have absolutely no relationship at all, and I would ask that the amendment be defeated."

Statement of Representative Wagner, Legislative Journal — House, September 25, 1979, p. 1833.

"Mr. President, I think that the unilateral provision is one that is humane. It recognizes that there is no law that presently exists, one that could possibly be passed, that could force two people to live

together when there is no longer a caring, a commitment or a desire to create a happy family unit. It would sometimes seem better to me that a divorce be granted to permit new family units to be provided so that there would be calm and serenity and caring."

Statement of Senator Reibman, Legislative Journal — Senate, March 10, 1980, p. 1372.

In conclusion, in this case we find that the parties have lived separate and apart in excess of three years within the meaning of section 201(d) of the Divorce Code because the evidence conclusively establishes that the parties have been living entirely separate lives for a period substantially in excess of this requisite separation period. The narrow interpretation of "separate and apart" followed in the majority of jurisdictions is generally applied to a fact situation in which the parties have discontinued sexual relations but not every other incident of the marital relationship. This court is aware of no reported cases which have extended the majority position to a fact situation which involved a lengthy period of separation followed by an entirely separate living arrangement under the same roof. The substantial policy reasons which this court has enunciated for more broadly construing "separate and apart" preclude the Pennsylvania courts from extending the majority rule (even if it were to be followed) to cover the extreme fact situation presented in this case.[3]

For these reasons, we will enter a decree granting a divorce under section 201(d).

---

3. Because of this holding, we need not decide whether a party may be entitled to a divorce by showing that the parties lived separate and apart for a period in excess of three years which does not immediately precede the filing of the divorce action.